Rachel CASTNER, Appellant,

v.

**FIRST NATIONAL BANK OF ANCHOR-AGE, Arctic Cold Storage, Inc., and Union Bank of Anchorage, Appellees.**

No. 16232.

United States Court of Appeals
Ninth Circuit.

March 24, 1960.

Edgar Paul Boyko, Los Angeles, Cal., for appellant.

Roger Cremo, Anchorage, Alaska, for appellees.

Before STEPHENS, POPE and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Plaintiff appeals from a judgment by the District Court for the Territory (now State) of Alaska dismissing her Second Amended Complaint and from a post judgment order denying her leave to file a Third Amended Complaint.

Jurisdiction in the court below was based upon Title 53, Ch. 2, Alaska Compiled Laws Annotated (1949) and 48 U. S.C.A. §§ 101 and 103; jurisdiction of this court rests upon 28 U.S.C. §§ 1291 and 1294(2).[1]

The suit was commenced on December 11, 1956, by Rachel V. Castner to have set aside the sale of certain property of L. V. Castner, Inc., an Alaska corporation, upon summary foreclosure of a chattel mortgage executed by that corporation to the Union National Bank of Anchorage. The property was purchased at the sale by the mortgagee, on November 20, 1950, later turned over to the First National Bank of Anchorage, successor of the Union National Bank of Anchorage, and is presently in the possession of the Arctic Cold Storage Company.

The allegations in the complaint as well as in the second amended complaint reveal that plaintiff-appellant initiated an action for and on behalf of L. V. Castner, Inc., against the two banks and the cold storage company. The corporation was also joined as a nominal defendant since any recovery would presumptively belong to it. Price v. Gurney, 1944, 324 U.S. 100, 65 S.Ct. 513, 89 L. Ed. 776. References herein to "defendants" or "appellees" do not include L. V.

Castner, Inc. In addition, two of the three directors (plaintiff being the third) of the corporation were joined as defendants, but made no appearance.

Appellant's allegations show that after the sale L. V. Castner, Inc. was adjudged a bankrupt on an involuntary petition and a trustee appointed, but that the trustee took no action to set aside the foreclosure sale prior to closing the bankruptcy estate. The gist of the claim asserted by appellant is that the chattel mortgage itself was void because it dispensed with the giving of notice on foreclosure sale contrary to law, that the sale was invalid because not conducted in accordance with statute, and that the property was sold to the mortgagee under a power of sale for an unconscionably low price in violation of the mortgagee's fiduciary obligation to the mortgagor. In addition to the primary relief, appellant also asks that a receiver be appointed to take charge of the property as well as for an accounting.

After the pleadings were settled the defendants moved for summary judgment on several grounds, among them:

"2. That the Second Amended Complaint herein is barred by the Statute of Limitations and plaintiff's laches.

* * * * * *

"4. That the plaintiff is barred from maintaining an action of the nature attempted to be alleged in her Second Amended Complaint for the reason that the corporation on whose behalf the action is alleged to have been brought would be barred from maintaining such an action under Territorial Law."

---

1. The admission of Alaska as the 49th State on March 1, 1959, did not affect the jurisdiction of this Court to proceed in this matter. Public Law 85–508 (the Alaska Admission Bill), 72 Stat. 339, approved July 7, 1958, and effective on admission of the Territory of Alaska into the Union as a State by proclamation of the President on January 3, 1959, No. 3269; 48 U.S.C.A. preceding section 21 note, by Section 12 struck from 28 U.S.C. § 1291 the reference to "the District Court for the Territory of Alaska" and re-

pealed 28 U.S.C. § 1294(2); however, pertinent portions of Section 14 of that Bill read as follows:

"All appeals taken from the District Court for the Territory of Alaska to * * * the United States Court of Appeals for the Ninth Circuit, previous to the admission of Alaska as a State, shall be prosecuted to final determination as though this Act had not been passed * * *"

See Parker v. McCarrey, 9 Cir., 1959, 268 F.2d 907.

In support of the motion defendant-appellees presented affidavits showing that the name of L. V. Castner, Inc., had been stricken from the corporate rolls of Alaska, on January 2, 1953, for failure to pay annual corporate license taxes, and that the corporation had failed to file annual reports as required by the laws of Alaska.[2] This motion was denied and the case was thereupon assigned to another judge and set for trial. Upon reviewing the record the second judge expressed some doubt as to the correctness of his predecessor's rulings, and instead of proceeding with the trial, reopened the matter on his own initiative and scheduled a further hearing several days hence on the motions.

Following this hearing the court entered judgment in favor of appellees and at the same time made extensive Findings of Fact and Conclusions of Law, though not obliged to do so. See Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899. The facts found were substantially those urged by appellees in their motion for summary judgment.

Appellant makes a number of specifications of error, but only three of them require consideration here; those will be discussed *seriatim.*

The first question is whether it was error requiring reversal for the second judge to review and set aside prior interlocutory orders made by another judge sitting in the same case.[3] In this regard the rule, stated simply, is that " * * * the various judges who sit in the same court should not attempt to overrule the decisions of each other, especially upon questions involving rules of property or of practice * * * " Shreve v. Cheesman, 8 Cir., 1895, 69 F. 785, 791; see also, Plattner Implement Co. v. International Harvester Co., 8 Cir., 1904, 133 F. 376.

In some instances, courts have viewed the rule as inflexible and without exception; on that basis they have denied the existence of power to act under any circumstances. Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 2 Cir., 1925, 10 F.2d 937; see also, Annotation 132 A.L.R. 14, 32.[4] However, the view has also been expressed that the statement does not express a rule of law, but simply one of practice resting upon principles of com-

---

2. The controlling sections of the statute are as follows:

§ 36-6-6, A.C.L.A. (1949). "Annual corporation tax: Penalty for nonpayment. Every corporation incorporated under the laws of the Territory of Alaska and every foreign corporation having its articles of incorporation on file in the office of the Auditor of Alaska, shall, on or before the first day of January of each and every year, pay to the Secretary of Alaska, for the use of the Territory, an annual corporation tax (heretofore under Chapter 11 of the Alaska Session Laws of 1913 known as the annual license fee) of fifteen dollars."

§ 36-6-9, A.C.L.A. (1949). "Striking from record name of corporation failing to pay tax. It shall be the duty of the Auditor of the Territory of Alaska to strike from the records of his office the names of all corporations which have neglected, or which shall hereafter neglect, for a period of two years to pay their annual corporation tax."

The first two complaints had been dismissed with leave to amend because appellant had not posted the bond required by Alaska law as a condition to the prosecution of a derivative suit. Ch. 85, Sess. Laws of Alaska, 1953.

3. Appellant urges that the first judge's ruling is controlling as the "law of the case." The latter phrase has been used to describe multiple situations in which one court considers prior rulings of its own or other courts both on the trial and appellate levels. Without deciding whether the phrase is appropriate in the instant case, we will briefly consider the principles involved. For a discussion of the various situations to which the phrase has been applied, see Annotation, 132 A.L.R. 14 (1941).

4. Commercial Union of America v. Anglo-South American Bank was subsequently reversed in Dictograph Products Co. v. Sonotone Corp., 2 Cir., 1956, 230 F.2d 131. The Court adopted the view that whether one judge may overrule another is a question of discretion for the second judge, although still adhering to the general principle of comity. It abandoned the view that the prohibition was absolute.

ity and uniformity " \* \* \* to preserve the orderly functioning of the judicial process." T.C.F. Film Corporation v. Gourley, 3 Cir., 1957, 240 F.2d 711, 714. Under this view exercise of the power becomes a matter of discretion limited by the framework of the rule from which it emanates. Where "cogent reasons" appear, as in Shreve v. Cheesman, supra, or "exceptional circumstances" exist, as in T.C.F. Film Corp. v. Gourley, supra, one judge may set aside or reverse a prior order made by a colleague. See United States v. Wheeler, 3 Cir., 1958, 256 F.2d 745.

This court has not considered the problem frequently. In Hardy v. North Butte Mining Co., 9 Cir., 1927, 22 F.2d 62, we reversed an order of a second judge discharging receivers appointed by a prior judge in a case where the appointment had been made in the exercise of judicial discretion. In Carnegie National Bank v. City of Wolf Point, 9 Cir., 1940, 110 F.2d 569, we held it was an abuse of discretion for a second judge to dismiss an action after it had been heard and submitted to another judge of the same court and no reason was shown why the second judge entered into the case. We cited Shreve v. Cheesman, supra, for the proposition that one judge should not overrule another " \* \* \* except for the most cogent reasons."

■ This court is therefore aligned with those holding that the power of each judge of a multi-judge court is equal and coextensive; it permits one to overrule the order of another under proper circumstances, and where one judge has done so the question becomes one of the proper exercise of judicial discretion.

■ We turn now to the instant case. We are concerned here with a second judge to whom a case has been assigned after a motion to dismiss the complaint and a motion for summary judgment have been denied by a prior judge and the case is set for trial. He is charged with the responsibility of conducting the trial to its conclusion. Yet after examination of the record he is firmly convinced that an error of law has been committed in denying the motions. He is faced with a dilemma: shall he adhere to the rule of comity and defer to the "erroneous" ruling of the first judge, thereby allowing a useless trial to proceed, or shall he reverse the order of the prior judge and permit immediate appeal, where he in turn may be reversed because he abused his discretion in overruling his colleague?

Under such circumstances, we feel that there is no abuse of discretion in overruling the prior judge. The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case. He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial. We think that these are cogent reasons and exceptional circumstances which justify a departure from the rule of comity within the permissible limits of judicial discretion.

It may be objected that this is opening the doors for similar reversals and basing discretion on whether the second judge is ultimately adjudged correct or not.[5] This is not true. For under our holding we are not concerned at this stage with whether the second judge is in fact correct, but whether he was justified in reviewing the prior judge's ruling at all. His substantive ruling may be, as a matter of law, erroneous, yet his

5. The Third Circuit has apparently limited the discretion of the second judge to those situations where the first judge is unavailable to pass on the question. T.C.F. Film Corp. v. Gourley, 3 Cir., 1957, 240 F.2d 711. It views the result reached in Dictograph Products Co. v. Sonotone Corp., supra, Note 4, as merely a rationalization because the second judge was correct, and if he were reversed because of the comity rule, a useless trial would result. The Court objects to any approach which conditions its rationale upon whether the second judge was correct in his substantive rulings.

right and power to do so is perfectly justified as a matter of discretion.

We conclude that the second judge did not abuse his discretion in reversing the orders of the first judge and now pass to a consideration of the judgment on the merits.

■ The second question raised is whether appellant may prosecute an action on behalf of L. V. Castner, Inc., in the light of the facts established in the hearing on the motion for summary judgment.

The Conclusions of Law entered on the findings are as follows:

"1. That the plaintiff as a former officer and shareholder in the bankrupt corporation, L. V. Castner, Inc., had no better right to prosecute a suit on behalf of the corporation than the corporation would have to maintain such suit.

"2. That after adjudication of bankruptcy all of the property of the insolvent corporation passed out of its control, the corporation charter was repealed, the officers and directors ceased to function and the corporation ceased to exist.

"3. The plaintiff cannot maintain this action on behalf of the corporation where the corporation itself could not maintain such suit.

"4. That the suit is barred by the statute of limitations as defined in Section 55-2-4(4), A.C.L.A.1949."

It is not entirely clear to us from these conclusions what view the trial judge took of the law, and it must be conceded that some of them are without foundation in the record and others so ambiguous as to be misleading.[6] This much is plain, that the court granted the motion on procedural grounds, i. e., the plaintiff had no standing to sue and in any respect the claim was barred by the statute of limitations. The merits of the claim, other than the fact that it was considered a derivative suit by a shareholder, were never reached. However, we are not concerned with the reasons given by the district judge for his action but rather center our inquiry upon a determination of whether the judgment he entered was right. J. E. Riley Investment Co. v. Commissioner, 1940, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; Kanatser v. Chrysler Corp., 10 Cir., 1952, 199 F.2d 610; 5 C.J.S. Appeal and Error § 1464(1). To do this we must now proceed to examine the record as it was presented.

By the provisions of § 36–6–7, A.C. L.A. (1949), " * * * no corporation, foreign or domestic, shall be permitted to commence or maintain any suit, action or proceeding in any court in this Territory without alleging and proving that it has paid its annual corporation tax last due and has filed its annual report for the last calendar year * * * "

None of the complaints filed by appellant contained allegations showing compliance with the requirements of the above statute, and appellees affirmatively made it appear in connection with their motion for summary judgment that L. V. Castner, Inc., was delinquent in both re-

6. Appellant states the following in her brief:

"It is assumed for the purpose of this appeal, that the conclusion of the Court below, that 'the corporation itself could not maintain such suit' * * * was based upon the repeal of the corporate charter * * * and not on the procedural technicality of the corporation's failure to pay its tax and file its annual report, in view of the well established rule that such compliance may be made at any time, so long as the corporation is able to prove this fact at any time during the trial. Thus this technical disability cannot be reached by motion, in the absence of clearly established prejudice to defendants. Richardson Vista Corp. v. City of Anchorage, 1952, 14 Alaska 1."

This demonstates the ambiguity of the lower court's findings and conclusions, for the court found that the corporation had been dissolved and had been stricken from the records of the State of Alaska. Whether one or both of these findings was the basis for the court's ultimate conclusion that appellant could not assert her claim because the corporation was barred from doing so, is not apparent from the record.

spects because of non-payment of annual corporation license taxes for several years past and that it had similarly failed to file annual reports. Had the action been one by the corporation itself, this deficiency in pleading would have made the complaint vulnerable to a motion to dismiss for failure to state a claim. Richardson Vista Corp. v. City of Anchorage, 1952, 14 Alaska 1. The ultimate failure in fact would operate to deprive the corporation of any right to resort to the courts of Alaska.

However, appellant argues that the effect of the above statute was to dissolve the corporation and bring the latter within another statute which continues corporate existence for the purpose of winding up its affairs, and to that end constitutes the directors as trustees with express authority to commence actions on behalf of the corporation.[7]

■■ There is no doubt that upon termination of the corporate existence by dissolution and while the statutory trustees are in charge for the purpose of winding up the corporate business, a shareholder in the defunct corporation may commence and maintain suit upon a claim of that corporation where the trustees have refused to do so. Watts v. Vanderbilt, 2 Cir., 1930, 45 F.2d 968.[8] But failure to pay taxes and file annual reports followed by administrative action taken under § 36–6–9, A.C.L.A., does not operate to dissolve a corporation and terminate its corporate existence. This conclusion appears clear from further sections of the same chapter of the Corporation Code, for by § 36–6–10, A.C.L.A., "reinstatement" of the corporation is permitted if the delinquency is corrected within ten years after striking the corporate name, and a duty is imposed upon the auditor only after a ten-year period without such reinstatement to:

"* * * enter upon his records a notation that such corporation is dissolved and it shall thereupon be dissolved, and the trustees of such corporation shall hold the title to the property of the corporation for the benefit of its stockholders and creditors." § 36–6–13, A.C.L.A. (1949).

Under such statutes, courts uniformly hold that striking the corporate name for failure to pay corporation fees and

---

7. Appellant cites § 36–1–148, A.C.L.A. (1949) in her brief as follows:

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to settle and close their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.

"Upon dissolution in any manner of any corporation the directors shall be trustees thereof, with full power to settle the affairs, collect the outstanding debts, sell and convey the property and divide the moneys and other property among the stockholders * * * [and] the directors, constituted trustees as aforesaid, shall have authority, to sue for and recover the aforesaid debts and property, in the name of the corporation, and shall be sueable in the same name, or in their own names or individual capacities for the debts owing by such corporation * * *"

This section was repealed and recodified in 1957 as § 36–2A–134 (Ch. 126 S.L. 1957). However, by Section 154 of the repealing act it was provided that "the repeal of a prior act by this Act shall not affect any right accrued or established, or any liability or penalty."

8. Indeed, there is a further paragraph in the same section cited above, Note 7, which permits creditors and shareholders additional rights after dissolution; it provides as follows:

"V. When any corporation shall be dissolved in any manner whatever, the district court for the Territory of Alaska, on application of any creditor or stockholder at any time, may either continue the directors trustees as aforesaid, or appoint one or more persons to be receivers of such corporation to take charge of the estate and effects thereof and to collect the debt and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all suits necessary or proper for the purposes aforesaid * * *"

taxes merely places the corporation in a state of "suspended animation," but does not effect a dissolution of the corporation. C.I.R. v. Bryson, 9 Cir., 1935, 79 F.2d 397; Klamath Lumber Co. v. Bamber, 1915, 74 Or. 287, 294, 142 P. 359, 145 P. 650; Humble Oil & Refining Co. v. Blankenburg, 1951, 149 Tex. 498, 235 S.W.2d 891; Purcel v. Wells, 10 Cir., 1956, 236 F.2d 469; 16 Fletcher Encyclopedia of Corporations, § 7997 (Perm. Ed. 1942 Rev.).[9]

█ Nor does the fact that L. V. Castner, Inc. was adjudged a bankrupt and that the bankruptcy estate was closed operate to effect a dissolution of the corporation. Bankruptcy alone does not mean that a corporation is dissolved. Haynes v. Central Business Property Co., 1926, 140 Wash. 596, 249 P. 1057; In re Town Crier Bottling Co., D.C.Mo.1954, 123 F.Supp. 588. As far as the record reveals, the corporation has not been dissolved in any manner whatsoever.

Thus we are presented with a situation where a shareholder is attempting to maintain a suit on behalf of a corporation where the latter, though still existing as a corporation, is within the letter of a positive statute denying corporations the right to use the courts because of its failure to comply with statutes requiring the payment of annual corporate taxes and the filing of certain required statements.

█ The evident purpose of these statutes is to penalize the corporation if it fails to comply with the revenue and regulatory acts, or to put the matter in another way, to coerce compliance by threat of this penalty should the corporation neglect or fail to obey the law. Pratt-Hewit Oil Corporation v. Hewit, 122 Tex. 38, 52 S.W.2d 64; Comment, "Suspension of Corporate Charter for Nonpayment of Franchise Tax," 48 Yale L.J. 650 (1938); III Cook on Corporations §§ 644-5 (8th Ed. 1223).

But if these statutes were construed to prevent any suits at all then those in control could with impunity deliberately disregard their fiduciary duties owed to the corporation and to the stockholders. Directors in charge of the management and property of the corporation could intentionally dissipate, misuse and improperly dispose of the property under their control in flagrant disregard of the obligations owing to the corporation and avoid all liability to the corporation and those beneficially interested therein by the simple expedient of intentionally failing to comply with such laws; no remedy would be available to the injured corporation and those beneficially interested against the faithless fiduciaries. In short, "it would penalize certain stockholders if the act [statutes] be so construed as to enable those in charge * * to defraud them." Pratt-Hewit Oil Corporation v. Hewit, supra, 52 S.W.2d at page 66. Because such statutes should not be allowed to perpetuate or encourage frauds and mismanagement,

"[c]ourts of equity have found little difficulty in affording stockholders of a corporation a remedy where it is shown that the directors, who are charged with the exercise of the utmost good faith in dealing with the corporate property as trustees for the stockholders have breached such trust and injury to the corporate property and the stockholders has resulted therefrom." Pratt-Hewit Oil Corporation v. Hewit, supra, 52 S.W.2d at page 66.

█ Thus, where the gist of the action brought by a shareholder on behalf of the corporation is that of mismanagement of directors, an equitable exception to the usual bar of such statutes is recognized and the action may be prosecuted notwithstanding the default of the corporation. Favorite Oil Co. of

---

9. Moreover, the prohibition against bringing suit under § 36-6-7, A.C.L.A., would be meaningless if the corporation were "dissolved" by striking its name under § 36-6-9, A.C.L.A. For by its dissolution, the corporation could maintain suit under § 36-1-148 and defeat the purpose of § 36-6-7.

384

Beaumont & Cleburne v. Jef Chaison Townsite Co., Tex.Civ.App., 162 S.W. 423; Humble Oil & Refining Co. v. Blankenburg, 1951, 149 Tex. 398, 235 S.W. 2d 891; Reed v. Norman, 1957, 48 Cal. 2d 338, 309 P.2d 809.

■ It is far from clear from the record whether the action brought by the appellant can be construed to be within this exception; she does name the directors parties defendant, but why this was done remains obscure. Directors are generally not necessary or indispensable parties to an action by or on behalf of the corporation they control. Venner v. So. Pac. Co., 2 Cir., 1922, 279 F. 832; Keenan v. Gladys Belle Oil Co., D.C.Okl.1926, 11 F.2d 418; Nienaber v. Katz, 69 Ohio App. 153, 43 N.E.2d 322. They are of course indispensable where they themselves are charged with fraudulent or improper conduct. Isaac v. Milton Manufacturing Co., D.C.Pa.1940, 33 F.Supp. 732. No direct statement in the complaint explains their presence. The one reference to them in the complaint is in the following allegation:

"The reason this action is not brought by said corporation itself is that the defendants, Mrs. Clarence Larson and Mrs. Barney Olson, who constitute a majority of the board of directors of said corporation, have refused and neglected to bring or prosecute the same, though requested by this plaintiff to do so."

This allegation is simply the one customarily made by shareholders in complaints made by them in derivative suits and by itself does not suggest the violation of a fiduciary duty on the part of the directors. Nisonoff v. Irving Trust Co., 2 Cir., 1933, 68 F.2d 32; Koshaba v. Koshaba, 56 Cal.App.2d 302, 132 P. 2d 854; Fed.R.Civ.P. 23(b), 28 U.S.C. However, in the affidavit filed by appellant in opposition to the defendant's motion for summary judgment are two statements, one of which directly refers to the directors and the other of which, though making a general reference, is broad enough to include the defendant directors. These statements are:

" * * * [t]he board of directors, of which I was only one member, ceased to function and, during the period in which I had no control, the corporation was allowed to become defunct and it was and is financially impossible for me to have it reinstated. I did make demand upon the existing officers of the corporation to take steps, but without result;"

that the foreclosure sale was "collusive"; and that the property was sold " * * * at a figure so far below the true value of the assets as to constitute an unconscionable advantage and a breach of good faith."

■ The allegation in the complaint and the statements found in the affidavit, when taken together and viewed in the light most favorable to appellant, are at least suggestive that the defendant-directors cooperated with the mortgagees to effect a fraudulent sale of the property of the corporation and deliberately allowed the corporation to become defunct in order to prevent it and the stockholders from bringing any action to secure redress from them and others involved.

These facts, if such they are, reveal the existence of a cause of action of the type recognized by equity as an exception to the operation of the statutes prohibiting suit by or on behalf of a delinquent corporation.

■ In view of our conclusion that the record tends to show the existence of facts permitting appellant to maintain this action, the Court below should not have entered the summary judgment against the appellant. For where the entire record reveals facts susceptible of inferences that would justify an amendment of the pleadings and save the action, a motion for summary judgment should not be granted, but the party against whom the motion is directed should be afforded an opportunity to amend his faulty pleading. Kane v.

Chrysler Corp., D.C.Del.1948, 80 F.Supp. 360; Rossiter v. Vogel, 2 Cir., 1943, 134 F.2d 908, 912. Accordingly, the judgment will be reversed and appellant permitted to amend her complaint to show, if possible, the facts suggested in her affidavit.

The third question is whether the right to prosecute the cause of action set out in appellant's second amended complaint, assuming that one was stated, was barred by a statute of limitations.

The trial judge was of the opinion that this action came within the purview of § 55–2–4(4), A.C.L.A., which fixes a period of six years from the time of its accrual within which to commence " * * * an action for the taking, detaining, or injuring personal property including an action for specific recovery thereof * * *." Appellant, it will be recalled, not only charges the mortgagee with a breach of fiduciary duties in connection with the sale of chattels under the mortgagee's power of sale, but further alleges that the mortgagee itself purchased the property at an unconscionably low price. She requests that a receiver be appointed and that an accounting be made. Under these circumstances, the sale is effective to pass legal title by delivery to the mortgagee, but because of the unfairness or lack of good faith in conducting the sale, it is voidable and may be set aside by the mortgagor. Jones, Chattel Mortgages and Conditional Sales (Bowers Ed.1933) §§ 806–809. To seek redress by way of avoidance, the mortgagor, lacking title must come into equity to set the sale aside. Emery's Motor Coach Lines v. Mellon National Bank, 1951, 136 W.Va. 735, 68 S.E.2d 370, 30 A.L.R.2d 529. Further, the additional relief sought, appointing a receiver, is one which has traditionally been within the exclusive providence of a court of equity. Myres v. Frankenthal, 1894, 55 Ill.App. 390; State ex rel. Barton v. Farmers' & Merchants Ins. Co., 1912, 90 Neb. 664, 134 N.W. 284.

In this situation,

" * * * statutes of limitation are not controlling measures of equitable relief. Such statutes have been drawn on by equity solely for the light they may shed in determining that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair." Holmberg v. Armbrecht, 1945, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743; see also, Alaska Northern Railway Co. v. Alaska Central Railway Co., 1915, 5 Alaska 304; Pomeroy, Equity Jurisprudence (5th Ed.1941), § 139.

More properly, the governing limitation on this type of action is laches, for "[i]f a sale under a power is voidable for some irregularity, such as that the mortgagee purchased without authority * * the mortgagor must institute proceedings for avoidance within apt and reasonable time, or his laches will bar him from relief." 19 R.C.L., Mortgages, § 433.

We conclude that the action asserted in the court below was equitable and therefore the statute of limitations does not apply.

One point remains. Appellant did seek leave in the court below to file a third amended complaint and has perfected an appeal from the order denying leave to amend. However, this motion was made more than three months after appellant had filed her notice of appeal from the summary judgment. Though the District Court did not lose jurisdiction by reason of the pending appeal to entertain such motion (Ferrell v. Trailmobile, 5 Cir., 1955, 223 F.2d 697), we cannot say that under the circumstances it erred in denying such motion. United States v. Newberry Mfg. Co., 1 Cir., 1941, 123 F.2d 453. The appeal from this order is therefore without merit. It would serve no useful purpose to enter into an extended discussion of that matter in view of our conclusion that

the judgment appealed from must be reversed and remanded.

Reversed and remanded for further proceedings in accordance with this opinion.