316 F.2d 804
 TANNER MOTOR LIVERY, LTD., a corporation, also known as Tanner Motor Livery, Appellant,
v.
AVIS, INC., a corporation and Avis Rent-A-Car System, Inc., a corporation, Appellee.
 No. 18357.
 United States Court of Appeals Ninth Circuit.
 April 22, 1963.
 
 COPYRIGHT MATERIAL OMITTED Tudor Gairdner, Jack E. Hildreth and William F. Peters, Los Angeles, Cal., for appellant.
 Adams, Duque & Hazeltine, James S. Cline and Alan Wayte, Los Angeles, Cal., for appellee.
 Before HAMLEY, BROWNING and DUNIWAY, Circuit Judges.
 DUNIWAY, Circuit Judge.
 
 
 1
 Tanner Motor Livery, Ltd., (Tanner) appeals from an order which (1) dissolves a preliminary injunction previously issued at its request and against Avis, Inc. (Avis) and Avis Rent-A-Car System, Inc. (System) and (2) grants, at their request, a preliminary injunction against Tanner. Federal jurisdiction is predicated upon diversity of citizenship.
 
 
 2
 Certain facts are not disputed. System is a subsidiary of Avis. Avis owns certain registered trademarks: "Avis Rent-A-Car System," and "Avis." Since 1947, Tanner has been a licensee of Avis in southern California. In 1956, and since, it has been so licensed as an exclusive licensee, by separate agreements, to operate rent-a-car and rent-a-truck businesses, using Avis' marks, in twelve cities in southern California and in Las Vegas, Nevada. Thereafter, it became similarly licensed in 1960 and 1961 in six additional southern California areas. Avis claims that, pursuant to power to do so, reserved in the agreements, it terminated Tanner's rights under each of the agreements, for cause. The validity of this termination is vigorously contested by Tanner. The termination was announced in a letter dated May 31, 1962, which states: "The termination is based on your failure to pay fees under the Exclusive License Agreement referred to." The letter cites paragraphs 3.1, 3.11 and 4.1 of the agreement. Paragraph 3.1 requires that Tanner report to Avis, by the 20th of each month, "the sum of all total time and mileage charges less all customer discounts * * * during the preceding month." Paragraph 3.11 requires that it pay certain fees monthly. Avis relied upon a further provision (paragraph 9 of the contracts), that "Except in the case of failure to pay fees required * * * or to make true reports under Section 3.1," Tanner could cure violations during 30 days following receipt of intention to terminate. Tanner claimed that it was not in default, and that its breaches, if any, were waived. Following some negotiations, Avis extended the time of termination from July 31, 1962, to August 15, 1962. This involved no waiver by either party of its rights, if any.
 
 
 3
 Beginning August 16, Avis, through its subsidiary, System, started to operate an "Avis" rent-a-car business in parts of Tanner's territory, or, as Avis claims, former territory. At the same time, Tanner continued to operate as before, using the Avis name. It is unquestioned that the southern California territory is a very valuable one, and that the exclusive right to operate in that territory as an Avis licensee is also very valuable. Important, if not essential, to the conduct of the business are such matters as listings in telephone and other directories, space in airport terminals and other locations, advertising, and the other familiar paraphernalia of such a business. Avis notified the telephone companies and various others in the area that Tanner was no longer authorized to use its name, and sought to have System listed as the "Avis" operator. It was endeavoring to obtain space for System at the Los Angeles International Airport. It shifted certain automobiles to the southern California area, and placed orders for the purchase of others. In short, Tanner was trying to continue to operate as an Avis licensee, and Avis was trying to prevent its doing so and to get its subsidiary, System, established in the business in Tanner's place. This was the state of affairs when this action was filed.
 
 
 4
 On October 4, 1962, Avis and System filed their complaint. It alleges many of the foregoing facts, and asks for a permanent injunction, preventing Tanner from using the Avis names or marks, requiring return to Avis of all of its forms and advertising matter in Tanner's possession, and requiring Tanner to notify the post office, Western Union, the telephone companies, etc., that all "Avis" messages must go to System or other Avis licensees. There was also a request for a preliminary injunction, but no steps were taken to obtain one. The district court for the Southern District of California, Central Division, does not use the master calendar system, and the case was assigned, when filed, to Judge Thurmond Clarke.
 
 
 5
 On October 29, 20 days after service of summons upon it, Tanner filed its answer. It also filed a counter-claim, in which it alleged that the licensing agreements were in effect, that it had the exclusive right to use the Avis marks in the territories involved, that it had built up a very valuable business as an Avis licensee, and that Avis and System were endeavoring, without justification, to destroy it. It sought damages, declaratory relief, moneys allegedly collected for it by Avis from customers and not paid over, and a preliminary and permanent injunction restraining Avis and System from competing with it and from advising others that they, rather than Tanner, are the only authorized Avis operators in the territory.
 
 
 6
 At the same time, Tanner filed a notice of motion and motion for a temporary restraining order and for a preliminary injunction, which latter was set for hearing on November 9, 1962, ten days later, in compliance with local rules. (Rule 3 (b)). Affidavits and points and authorities were filed in support of the motions. Judge Clarke was away on an extended vacation, and Chief Judge Peirson M. Hall issued a temporary restraining order, prohibiting Avis and System from attempting to prevent a telephone company from listing Tanner as an Avis licensee in its directories, and to have themselves so listed.
 
 
 7
 On October 30, Avis and System filed an application for a modification of the temporary restraining order, and this was denied on the same day by Chief Judge Hall.
 
 
 8
 On November 5, Avis and System filed a notice of motion and motion, with a supporting affidavit, for continuance until November 21 of the hearing on Tanner's motion for preliminary injunction. They obtained an order from Judge William C. Mathes shortening the notice of motion period, the motion being set for hearing on November 7. The motion was based upon the contention that, because Avis' main office, officers and records were in New York, additional time was required to obtain evidence, particularly an affidavit of one Morrow, Avis' Vice President and General Manager. On November 7, Tanner filed opposing affidavits and authorities. The motion for continuance was heard and denied by Chief Judge Hall on that day.
 
 
 9
 On November 9, the motion for preliminary injunction was heard. Additional affidavits were filed in support of the motion. Tanner also showed that Morrow was in Los Angeles on November 7, endeavoring to get a lease at the airport. There was also some testimony as to Avis' and System's activities in the area. No other evidence was offered by Avis or System, on the ground that they were not able to offer any. This, in spite of the facts (1) that Avis gave notice of termination on stated grounds, on May 31, over five months before, (2) that Avis filed the complaint on October 5, over a month before, and (3) that Morrow had been in Los Angeles two days before, on the very day when counsel sought a continuance on the ground that time was needed to obtain his affidavit.
 
 
 10
 On November 14, Chief Judge Hall made and filed his findings of fact and conclusions of law, and preliminary injunction, restraining Avis and System from interfering with Tanner's business as Avis' licensee, and from conducting a competing business until final hearing or further order of the court. It indicated that while the injunction was in effect, Tanner should comply in all respects with the contracts.
 
 
 11
 On November 19, a Monday, Judge Clarke returned from his vacation. That morning, Avis and System filed their reply to Tanner's counterclaim, and obtained from Judge Clarke an order to show cause, returnable two days later, on November 21, why Chief Judge Hall's preliminary injunction should not be dissolved and a preliminary injunction issued in favor of Avis and System. This order was issued by Judge Clarke at 9:10 a. m. on November 19. In support of this order and application, four affidavits and a memorandum of points and authorities were filed. One affidavit, by Morrow, attempted to show numerous breaches by Tanner of the license agreement, including several that were not mentioned in Avis' notices to Tanner of termination. One "affidavit," that of Cline, Avis' and System's attorney, which sought to show that the hearing before Judge Hall was a "default" hearing, because Cline had been unable to obtain necessary affidavits, is not sworn to, but purports to be made "under penalty of perjury," a procedure not known to the federal courts.
 
 
 12
 On November 21, when the matter came on for hearing, Tanner filed two memoranda in opposition, one dealing with the merits of the motions, and the other urging that the matter should be heard before Chief Judge Hall. It also objected to having the matter heard on only two days' notice. Judge Clarke overruled the objection, stating that Judge Hall was in Kansas and could not "physically or mentally hear this case." (The statement would have been correct if the word "today" had been added to it. Judge Hall returned in time to have heard the matter if the usual 10 day notice, normally required by local rule, had been given.) Avis and System then offered in evidence a telegram from a telephone company in Palm Springs, stating that, unless the preliminary injunction were modified, it could not list Avis or System in a directory that was about to be published. They then rested. Tanner offered, and the court received, oral testimony, both as to the alleged breaches and as to the current status of the parties' businesses. It also put Cline and Morrow on the stand, primarily to show that the evidence in the Morrow affidavit, and Morrow himself, were available before the hearing of Tanner's motion by Chief Judge Hall on November 9. The hearing was continued to November 27, and completed on that day. Tanner filed a further memorandum in opposition.
 
 
 13
 On November 28, Judge Clarke granted both of Avis' and System's motions. He made and filed his formal findings, conclusions, and preliminary injunction, on December 7. His findings include a finding that Chief Judge Hall was away on November 20 and 21, but not on November 19 or after November 21. He also found in favor of Avis and System, in detail, on the merits. His injunction grants them substantially all injunctive relief that they could have obtained after a plenary trial on the merits.
 
 
 14
 Tanner appealed on December 10, and we stayed Judge Clarke's order pending appeal, so that Chief Judge Hall's order is now in effect. We conclude that Judge Clarke's order must be reversed.
 
 
 15
 1. It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits, and it is not usually proper to grant the moving party the full relief to which he might be entitled if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather than preserving the status quo, completely changes it. Yet this is what Judge Clarke's order does, and it is based upon findings that purport to determine that Tanner breached the contracts, that its breaches could not be cured, and that Tanner has no substantial defense to the action. These are matters to be determined at trial, not upon the motion for preliminary injunction.
 
 
 16
 It has been said, and we agree, that: "The status quo is the last uncontested status which preceded the pending controversy." (Westinghouse Elec. Corp. v. Free Sewing Mach. Co., 7 Cir., 1958, 256 F.2d 806, 808). Here that status quo is that Tanner was, and had been for many years, an Avis licensee, operating an extensive business from which both Tanner and Avis were realizing profits. (See Lea v. Vasco Products, Inc., 5 Cir., 1936, 81 F.2d 1011; Maison Dorin Société Anonyme v. Arnold, 2 Cir., 1924, 296 F. 387). Tanner was endeavoring to continue to so operate. Avis sought to change that status; Judge Clarke's order grants it what it seeks.
 
 
 17
 We are not to be understood as stating that the foregoing principles are hard and fast rules, to be rigidly applied to every case regardless of its peculiar facts. The infinite variety of situations in which a court of equity may be called upon for interlocutory injunctive relief requires that the court have considerable discretion in fashioning such relief. But the court's discretion is neither arbitrary nor unlimited; it is to be guided by the principles long established in courts of equity, and a departure from those principles is justified only where the practicalities of the problem with which the court is faced require it. We can find no such requirement here. Judge Hall applied these principles,[1] Judge Clarke did not. The issuance of Judge Clarke's order was an abuse of his discretion.
 
 
 18
 2. The manner in which the order appealed from was made was also an abuse of discretion. We have heretofore held that each judge of a multi-judge district court has the same power and authority as each other judge. (Castner v. First Nat'l Bank, 9 Cir., 1960, 278 F.2d 376). We there held that, where judge A of such a court had denied a motion for summary judgment, and the case was then assigned to judge B for trial, judge B could grant the same motion. This is but an application, in the case of a multi-judge court, of the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory. But in that case we also reiterated our prior statement that "one judge should not overrule another * * * `except for the most cogent reasons'." (Id. at 380). We also said: "This court is therefore aligned with those holding that the power of each judge of a multi-judge court is equal and co-extensive; it permits one to overrule the order of another under proper circumstances, and where one judge has done so the question becomes one of the proper exercise of judicial discretion." (Id. at 380).
 
 
 19
 An order granting or denying a preliminary injunction is made appealable, as of right, by statute. (28 U.S.C. § 1292(a) (1)). In this respect, it differs from most interlocutory orders, such as, for example, the order denying a motion for summary judgment involved in Castner, supra. This does not mean that an order granting a preliminary injunction cannot be reconsidered by the district court if an appeal is not taken. But we think that it does mean that, in such a case, the requirement that there be "the most cogent reasons" for its reconsideration by another judge is peculiarly applicable. Thus, in Hardy v. North Butte Mining Co., 9 Cir., 1927, 22 F.2d 62, we reversed an order, by a second judge, discharging a receiver appointed by another judge. An order appointing a receiver is also appealable, (28 U.S.C. § 1292(a) (2)), and has been since 1900 (31 Stat. 660). We emphasize the appealability of the order because it afforded Avis and System a means whereby they could have had Judge Hall's order reviewed by this Court. There was therefore no necessity for their resorting to the district court, much less to a different judge, to obtain review if they felt that Judge Hall had erred.
 
 
 20
 In Hardy, supra, this Court considered at length the indelicacy, the "`unseemly struggles to obtain a hearing before one judge in preference to the other'," the impropriety, the "unseemly conflicts" likely in procedure such as here involved. We also discussed the necessity for "`dignified and orderly procedure of the courts'." Here, no showing was made why appellees' motions could not be heard in due course by Judge Hall, who issued the first injunction, or why the matter should be heard upon two days' notice rather than the customary ten specified in the rules. The procedure was subject to all of the objections discussed by us in Hardy.
 
 
 21
 Moreover, there was no showing of changed circumstances between November 14, when Judge Hall issued his injunction, and November 19, when Judge Clarke returned from his vacation. We think that, in the absence of changed circumstances, and except there be some other "most cogent reason," when a judge makes or denies an interlocutory order, and when an appeal lies, as of right, from such an order, it should not be reconsidered, even by the judge who first made the order, much less by another judge. Orders of United States Courts, deliberately made, after proper notice and hearing, and subject to review by this Court, are not to be lightly changed by any judge of the trial court.
 
 
 22
 3. The only other reason suggested is appellees' claim that they did not get a full hearing before Judge Hall, because they did not have time to prepare their evidence. In this Court, they have referred to that hearing as one by default. This is an overstatement. If appellees were not in a position to present their evidence as they claim, it appears to us that the fault lies with them, not with Judge Hall or with Tanner. The dispute was months old at the time of the hearing; appellees had initiated it, and stated their grounds, as early as May 31; and their key witness, Morrow, could have appeared and testified. For reasons best known to themselves, appellees chose not to produce him.
 
 
 23
 4. Appellees urge, in support of Judge Clarke's order, that the evidence shows that Tanner could not recover in any event, and that, if it could, its rights could not be protected by an injunction, its sole remedy being for damages. These contentions, which go to the merits, may ultimately prevail. We do not pass upon them, except to state that we do not think that the answers are as clear as appellees seem to think.
 
 
 24
 5. In his findings of fact, Judge Clarke purported to find against Tanner and in favor of Avis and System on the merits. In view of this fact, and of what we have said about the procedure, we think it better that the trial of the action be before another judge. We have power to so order. (28 U.S.C. § 2106; see United States v. Ritter, 10 Cir., 1959, 273 F.2d 30; Occidental Petroleum Corp. v. Chandler, 10 Cir., 1962, 303 F.2d 55, cert. denied, 372 U.S. 915, 83 S.Ct. 718, 9 L.Ed.2d 722; cf. United States v. United States District Court, 6 Cir., 1954, 209 F.2d 575; Gladstein v. McLaughlin, 9 Cir., 1955, 230 F.2d 762.)
 
 
 25
 The orders of November 19, 1962, and December 7, 1962, are reversed and vacated in all respects, and the matter is remanded, with direction that the Chief Judge for the Southern District of California assign the action, and all further proceedings therein, to another judge.
 
 
 
 Notes:
 
 
 [1]
 Judge Hall's findings include the following:
 "That the preservation of the `status quo' of the parties, pending the outcome of the litigation of the matter on its merits, requires that defendant Tanner be the sole and exclusive one to operate a U-Drive rent-a-car business under the trade name and trademark and style of Avis, Avis Rent-A-Car System, or any contractions thereof.
 * * * * *
 "That the preservation of the status quo of the parties hereto in accordance with the manner in which they have conducted themselves for over fifteen years under the covenants, terms and conditions of the aforesaid nineteen exclusive license agreements will result in a minimum amount of harm to the plaintiffs Avis and Avis System. That in connection therewith, the court finds that both parties should keep accounting records of the business done by the respective parties hereto in connection with the operation of the U-Drive rent-a-car business under the name Avis, Avis Rent-A-Car System or any contractions thereof."