**Ruth I. GANT, Plaintiff,**

v.

**ALIQUIPPA BOROUGH and Daniel LaRue, Defendants.**

**Civ. A. No. 84–1675.**

United States District Court, W.D. Pennsylvania.

July 10, 1985.

Scott L. Melton, Conte & Courtney, Conway, Pa., for plaintiff.

George M. Evan, Tighe, Evan & Ehrman, Pittsburgh, Pa., for defendant LaRue.

Dougherty, Larrimer & Lee, Jr., Peter Molinaro, Jr., Pittsburgh, Pa., for defendant Aliquippa Borough.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff is a black woman, age 53, who has filed a civil rights complaint against the Borough of Aliquippa and a police officer, Daniel LaRue, employed by it. The complaint alleges that she was arrested by defendant LaRue without justification or probable cause, was severely beaten by him, manacled, taken by Borough police officers to the police station, detained, questioned, and denied necessary medical care while confined. She was later released. She alleges that as a result of this treatment she had to undergo hospitalization for 25 days.

She alleges violations of 42 U.S.C. § 1983 and § 1985 by both defendants.

■ Both defendants have moved for judgment on the pleadings and for summary judgment on all counts of the complaint. Plaintiff has moved for leave to amend the complaint to supply some of the details whose absence are the grounds of defendants' motions for judgment on the pleadings. Defendants oppose the motion to amend on the grounds of lateness, further delay, the necessity of further discovery, and the like. Any delay in this case is as much the fault of defendants as of plaintiff; the court can see no possible surprise to defendants or need of further discovery because the matters added by amendment were disclosed during the discovery period and are equally known and available to defendants as to plaintiff. At any rate we would not dismiss this complaint on the pleadings without an allowance to plaintiff to amend. The Federal Rules of Civil Procedure provide that leave to amend be liberally allowed; we see nothing particularly liberal in our allowance.

[W]here the entire record reveals facts susceptible of inferences that would justify an amendment of the pleadings and save the action, a motion for summary judgment should not be granted, but the party against whom the motion is directed should be afforded an opportunity to amend his faulty pleadings.

*Castner v. First National Bank,* 278 F.2d 376, 384 (9th Cir.1960). The amended complaint sets forth in considerable narrative detail the material generally covered in brief summary form in the complaint.

Considerable discovery has been employed here. The defendants' motions and plaintiff's response are documented in detail, and all are extensively briefed.

## THE MOTION OF DEFENDANT LaRUE

(a) *The 1983 claim:*

LaRue argues that while plaintiff has properly alleged that he was acting under color of state law and that she was deprived of the rights, privileges and immunities secured her by the constitution, nevertheless she was not deprived of these without due process of law because adequate state remedies are available to her by civil actions for assault, battery, false arrest and false imprisonment against Officer LaRue. This is an extreme extension of the

rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980). That case involved the procedural due process claim of a prisoner whose model building kit was lost in the prison post office. The Court held that not all deprivations of rights to liberty and property are so egregious as to amount to constitutional deprivations and held that the proper inquiry was whether proper post-deprivation due process was available. It found that it was in a simple and readily available state remedy for recompense for the loss of property.

■ But plaintiff here is not alleging a due process claim. She alleges a claim for a direct and intentional invasion of her substantive right to the constitutional guarantees, the right to be free from violence and injury by the state's own agents. As such she has a right of action against the officer under Section 1983. This complaint does not allege a simple tort action against a state officer, but a deliberate and intentional invasion of a substantive constitutional right. Whether or not that allegation can be sustained requires the production of evidence of all the surrounding circumstances.

(b) *The 1985(3) claim:*

■ Defendant LaRue argues that the conspiracy claim against him must fail because plaintiff has failed to come forth with any evidence showing a prior agreement between LaRue and other police officers or representatives of the Borough. Nevertheless she has pleaded that she was arrested by LaRue, put into the custody of other police officers, and detained and interrogated by them. Conspiracy can rarely be proven by direct evidence of agreement; rather it largely depends on the circumstances and this is a matter of fact which must be determined by trial. *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This cannot be determined by summary judgment. We will discuss the conspiracy claim further with respect to the defendant Borough's parallel motion.

## THE MOTION OF DEFENDANT BOROUGH

(a) The 1985(3) claim:

■ We recognize that an employer may not be subject to a conspiracy claim by the doctrine of *respondeat superior.* Neither may the employer be held to conspire with one of its own employees acting in his official capacity. *See, Keddie v. Penn State Univ.,* 412 F.Supp. 1264 (M.D.Pa. 1976). This is a situation where it takes more than two to tango. Nevertheless, in *Novotny v. Great American Federal Savings & Loan Association,* 584 F.2d 1235 (3d Cir.1978) it was held that two agents of one corporation acting within the scope of their employment could be held liable for conspiracy under Section 1985(3). The plaintiff has recited acts by LaRue and other police officers, either in concert or in tandem, violative of her constitutional rights. This appears to open the door to the inclusion of the Borough in the conspiracy charge. *See Brown v. Fairleigh Dickenson Univ.,* 560 F.Supp. 391, 405–6 (fn. 5) (D.N.J.1983).

■ The Borough is a "person" subject to Section 1983 claims; it may be assumed that it is a "person" subject to Section 1985(3) claims. *See Thompson v. State of New York,* 487 F.Supp. 212, 228 (N.D.N.Y.1979). Because plaintiff has pleaded a series of acts by members of the Borough police department, all directed against black persons, with evidence of racial animus, within a period of a few months, known to superior officers of the Borough and the subject of comment and inquiry at meetings of the Borough council, the plaintiff may be allowed to produce proof of circumstances sufficient to establish a tacit agreement or an official policy of acquiescence by the Borough. *Leonard v. Argento,* 699 F.2d 874 (7th Cir.1983); *Turpin v. Mailet,* 619 F.2d 196 (2d Cir. 1980); *Herrera v. Valentine,* 653 F.2d 1220 (8th Cir.1981). This is not susceptible of summary judgment.

**(b) The 1983 claim.**

██ Defendant Borough relies on the landmark opinion in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which holds that a local government unit may not be held liable in a federal civil rights claim under a theory of *respondeat superior* or vicarious liability. *Monell* held that liability attaches when the unconstitutional violation is the result of some Borough policy that implement or execute a policy statement, ordinance, regulation or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy.

In support of its contention, defendant Borough has produced a series of identical affidavits, and deposition testimony, from the Mayor, the Chief of Police, members of Council, and other employees, that they knew of no ordinances, laws, regulations and policies adopted by the Borough which serve to deny constitutional rights to blacks. But *Monell* is not so limited. "[L]ocal governments, like every other 1983 'person', by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels. Aa Mr. Justice Harlan, writing for the Court, said in *Adickes v. S.H. jKress & Co.,* 398 U.S. 144, 167–168, 90 S.Ct. 1598, 1613–1614, 26 L.Ed.2d 142 (1970): 'Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials.... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" pp. 690–691.

██ Plaintiff has pleaded a series of racially related acts of alleged constitutional violations within a short time period around the time of the present incident, knowledge of these by the governing body and inquiry into the same, and the failure of the governing body to implement its well intentioned resolution by any affirmative corrective action. Plaintiff specifically pleads the lack of specialized training for its police officers to meet the particular problems that it was aware existed. These are all matters of fact which preclude summary judgment. They must be fully developed and answered at trial.

An appropriate order will be entered.

### ORDER

NOW, this 10th day of July, 1985, in accordance with the foregoing Opinion it is ORDERED that:

(1) Plaintiff's Motion for leave to Amend the Complaint is GRANTED;

(2) The motions of both Defendants for judgment on the pleadings and for summary judgment are DENIED;

(3) Counsel shall appear before the Court for a Pretrial Conference on Thursday, August 29, 1985, at 4 p.m.