772 F.2d 906
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GENERAL BOX COMPANY, PLAINTIFF-APPELLEE,
v.
ROCKAWAY CORPORATION, DEFENDANT-APPELLANT.
 NO. 85-3036
 United States Court of Appeals, Sixth Circuit.
 8/19/85
 
 N.D.OHIO
 REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: KEITH, MARTIN, and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 General Box Company (GBC), appellee, commenced this action by filing a complaint on September 27, 1984 alleging a) violations of the Sherman Antitrust Act, 15 U.S.C. Secs. 1 and 2; b) violation of federal patent laws, Title 35, United States Code; and c) violation of the Valentine Act, Chapter 1331 of the Ohio Revised Code, on the part of appellant Rockaway Corporation (Rockaway).
 
 
 2
 On November 1, 1984 Rockaway filed lawsuits in the state courts of Michigan, Mississippi, North Carolina, Texas and Wiconsin seeking to replevin machinery rented by GBC. Rockaway's state lawsuits sought repossession of machinery allegedly licensed and leased to GBC and unlawfully retained by GBC in violation of contract. On November 9, 1984 GBC removed each of the state court actions to the respective federal courts in those jurisdictions.
 
 
 3
 On that same date, GBC filed a motion for a temporary restraining order, preliminary injunction, and permanent injunction. GBC sought injunctive relief prohibiting Rockaway from proceeding with the replevin actions. After a hearing, the United States District Court for the Northern District of Ohio, Western Division, granted GBC's application for a temporary restraining order. The court subsequently heard GBC's motion for a preliminary injunction. On December 6 the district court granted the preliminary injunction restraining Rockaway from instituting suit against GBC for replevin or any other action regarding the machinery in other courts. The court also ordered GBC to post a $5,000.00 bond and did not require GBC to make any rental payments for the use of Rockaway's wire-bound box machinery pending a final determination on the merits.
 
 
 4
 Rockaway filed its notice of appeal challenging the grant of extraordinary relief and the alleged inadequacy of the bond requirements. Rockaway then filed a motion with the trial court for an order requiring plaintiff to resume rental payments for the use of defendant's machinery and to make an accounting of the use made of the machinery during the pendency of its appeal.[1]
 
 
 5
 The trial judge held that Rockaway's notice of appeal had divested it of jurisdiction to consider defendant's motion, but added:
 
 
 6
 The Court does not look with favor upon defendant's [Rockaway's] motion. The Court has already considered the arguments made therein in determining the terms of the injunctive order.
 
 
 7
 GBC contends that the court's December 6 order extending the temporary restraining order into a preliminary injunction merely barred appellant Rockaway from pursuing any replevin-like relief in other courts. Rockaway, on the other hand, appeals primarily on the grounds that the effect of the order was to bar any replevin-like relief or adequate bond security.
 
 
 8
 In oral argument before this court Rockaway contended that it loses approximately $200,000 every six month rental period that GBC fails to remit these contract royalty or lease payments due under the agreement. GBC concedes in its brief that it attained over $10,000,000 in gross sales subject to the agreement in 1983, the last full year in which it furnished reports and paid royalties.
 
 
 9
 The contract between the parties covered a twenty-five year term beginning in 1977. The agreement was based on rent or royalty ranging between 4% or 2% of GBC's gross box sales depending on the particular Rockaway machinery used. GBC claims that the present lease represents an extension of the original lease initiated between the parties, or their predecessors, in 1946. At that time Rockaway had certain patent rights on the machinery which allegedly expired prior to 1971, the renewal date.[2] Asserting that Rockaway is the sole manufacturer of wirehound box-making machines in the United States, GBC claims that Rockaway engages in illegal monopoly activity through enforcement of the lease. GBC emphasizes this alleged monopolization as the reason why it ceased making any further lease payments or furnishing sales reports in April and June, 1984, respectively. On August 31, 1984, Rockaway notified GBC that the agreement would be cancelled unless GBC cured its breach by making the payments due. GBC then initiated this suit challenging the lease as part of an unlawful monopoly.
 
 
 10
 GBC demands treble damages and a declaratory judgment that it is the lawful owner of all wire-bound box-making machinery currently in its possession. GBC has continued for more than a year to utilize the machinery subject to the challenged lease or license agreement without making any payment. It has also been required to post only a $5,000 bond to maintain this status pending ultimate outcome of its antitrust claims.
 
 
 11
 We first consider the action of the district court in consolidating the claims between the parties and precluding suits in other jurisdictions arising out of the disputed machinery lease. We agree with the court below that Rockaway's bringing of separate actions was the equivalent of filing courterclaims to GBC's original action. The Ohio district court had original and prior jurisdiction of these claims because they directly involved the issues presented by GBC in its challenges to the validity of the leases. See Wheeling Pittsburg Corp. v. Donovan Wire & Iron Co., 416 F. Supp. 602 (N.D. Ohio 1976), (acknowledging 'general rule that the court first acquiring jurisdiction of a controversy should enjoin subsequent proceedings therein in other jurisdictions') aff'd, 577 F.2d 744 (6th Cir. 1978); Scott & Fetzer Co. v. McCarty, 450 F. Supp. 274, 276 (N.D. Ohio 1977) (citing general rule as acknowledged in Wheeling).
 
 
 12
 We find that the district court properly balanced the interests of justice by consolidating this legal controversy within its jurisdiction. See Columbia Plaza Corp. v. Security National Bank, 525 F.2d 620, 628 (D.C. Cir. 1975). The preclusion of similar claims involving the same machinery lease in other courts was within the inherent authority of the district court.
 
 
 13
 The remaining issue in this case, however, is the district court's requirement of only a minimal bond from GBC. The district court has also precluded Rockaway from collecting rentals due under the terms of the challenged leases or license agreements. Due simply to its allegations of antitrust violations by Rockaway, GBC has thus been permitted to continue use of Rockaway's machinery without making any contractually required payments, and has not been required to set aside any moneys by escrow or otherwise. This state of affairs has seriously disturbed the status quo ante posture of these parties to the substantial detriment of Rockaway pending resolution of the controversy. The district court, moreover, should have determined the likelihood of GBC's success on the merits before granting this extraordinary relief to a party under the circumstances. See Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir. 1977).
 
 
 14
 The district court's order thus fails to maintain the status quo because it does not take into account GBC's continued use and benefit of the contested machinery during the pendency of this dispute. This failure to provide Rockaway with compensating protection of a reasonable secured bond, escrow deposit, or other mechanism is unjust. See Washington Capitols Basketball Club, Inc. v. Barry, 419 F.2d 472, 476 (9th Cir. 1969), citing Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808-809 (9th Cir. 1963), cert. denied, 375 U.S. 821 (1963). It is also not just to free GBC from the responsibility of providing the accounting reports required under the agreement of the parties.
 
 
 15
 We REMAND this case accordingly for prompt and appropriate action by the district court to set out terms and conditions of GBC's continued use of the disputed machinery by reason of the effect of injunctive relief thus far granted.
 
 
 16
 The court should take into account, among other things, the value of the machinery, the amount of contractual rentals due from the time of GBC's cessation of payment, and the additional period anticipated for resolution of the dispute. The court should also undertake some provisional accounting of reasonable future payments (either through escrow, directly to Rockaway, or by way of adequate secured bond) to protect Rockaway in the event that GBC fails to prevail.
 
 
 17
 Each party should bear its own costs of this appeal.
 
 
 
 [1]
 GBC has moved under Federal Rule of Appellate Procedure 10 that this court refuse to consider the court's supplemental ruling and other material in the Joint Appendix not before the district court when it issued its December 6 order now on appeal. We, however, find strong grounds for taking judicial notice of the clarifications in the supplemental order. See Landy v. Federal Deposit Insurance Corp., 486 F.2d 139, 150-51 (3d Cir. 1973)
 
 
 [2]
 GBC claims that Rockaway attempted 'unilateral inclusion of certain patents within its agreement' in 1968, thus attempting to extend its 'monopoly' beyond the term of the original patents