[Civ. No. 11926. Second Appellate District, Division One.—September 19, 1940.]

HENRY ARTHUR CHURCH et al., Minors, etc., Appellants, v. CLYDE M. CHURCH et al., Respondents.

A. V. Falcone for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

DORAN, J.—This is an appeal by plaintiffs from a final judgment.

The action was brought by appellants as minors, suing by their guardian *ad litem,* for an alleged conversion by respondents of certain stock certificates issued in the name of Harry

A. Church, as trustee for said respective appellants. The said Harry A. Church is the respondent H. A. Church, Jr. (hereinafter referred to as Harry Church), and is the father of appellants.

The complaint sets forth four separate causes of action, one for each of said appellants, alleging that prior to and on or about February 20, 1928, each of said appellants was the owner of preferred shares of the capital stock of respondent corporation South Pasadena Finance Company, of the then value of $5,600, and that on or about said date the respondents converted said shares to their own use and benefit.

All of the named defendants and respondents, except Harry Church, and in addition D. L. Brainerd, sued by a fictitious name, appeared and joined in answering appellants' complaint. It does not appear that Harry Church interposed any answer or that any default was taken against him.

Respondents by their answer deny ownership of said stock by appellants and the conversion thereof by respondents, and set up affirmative defenses of the bar of limitations; also an additional separate defense of estoppel.

The trial court found for the respondents on practically all material issues raised by the pleadings including the separate defenses of respondents.

As will hereinafter appear, the basis for the alleged conversion on which appellants' causes of action are founded is the sale by Harry Church back to respondent South Pasadena Finance Company of shares of its stock issued in his name as trustee for appellants, his minor children, and held by him.

The following appears from facts stipulated and evidence adduced at the trial:

There were two corporations of the name South Pasadena Finance Company, one virtually a successor of the other. The first was organized in April, 1924, and was dissolved in April, 1927, and the second was incorporated on March 18, 1926. The shares of stock in question here were those of the second corporation.

The first corporation was organized by H. A. Church, Senior, the father of Clyde, Ralph and Harry Church, and the grandfather of appellants; R. O. Church (Ralph Church); H. A. Church, Jr. (Harry Church); W. W. Cottle and C. M. Church (Clyde Church). The second corporation was or-

ganized by C. M. Church (Clyde Church), R. O. Church (Ralph Church), H. A. Church (Harry Church). The said corporations appear to have been family affairs, formed and organized principally to take care of and generally administer certain personal property, such as notes, mortgages, etc., given his children during his lifetime by the said H. A. Church, Senior. The first corporation was organized pursuant to the expressed wish of said H. A. Church, Sr.; and his four children, Clyde, Ralph and Harry Church and Mrs. Cottle, transferred to said corporation the property that each had received from their father as above mentioned and took in exchange therefor the stock of said corporation. Some of the said shares that each thus received were issued in their respective names as trustees for their respective children, the grandchildren of H. A. Church, Sr. This was true of some of the shares so issued to Harry Church. The evidence is conflicting as to why such trustee shares were issued.

It appears that the second company was organzied in order to conform to a change in California law regarding stock of no par value. The assets of the first corporation were transferred to the second company, the stock of that company was turned in and surrendered in exchange for an equal number of shares of the second company of the same proportionate value. No cash or additional consideration appears to have been paid for the shares in the second corporation.

Harry Church was president and a director of the second corporation from its formation until at least October 15, 1928. The directors of the corporation as shown by the minutes of February 7, 1928, and by the minutes of March 20, 1928, were H. A. Church (Harry Church); C. M. Church (Clyde Church); W. W. Cottle; R. O. Church (Ralph Church), and W. J. Filley, and the officers as shown on both of those dates were H. A. Church, president, C. M. Church, secretary, R. O. Church and W. J. Filley, vice-presidents, Lois C. Lientz, assistant secretary, and W. W. Cottle was treasurer.

Steps to wind up and dissolve the second corporation were taken in 1935.

The details incident to the disposition of the stock in question were revealed at length during the trial. It would serve no purpose to recount them here. It is sufficient to

note that the trial court found that there had been no conversion of the stock in question and this finding, which is well supported by the evidence, is decisive as to all of the issues here presented.

It may be assumed that a valid trust was created by Harry Church when he took out shares of the family corporation in his name as trustee for his children. (See Restatement of the Law of Trusts, section 17, page 64, and *Cahlan v. Bank of Lassen County,* 11 Cal. App. 533, 540 [105 Pac. 765], which latter is cited by appellants). However it cannot be said as a matter of law that Harry Church did not have the right as trustee to transfer the shares in question whenever, in the exercise of his discretion, it appeared to him proper or necessary so to do. He had never executed any document in writing or declaration of trust restricting his power in this respect, and there is sufficient evidence in the record to warrant a finding that, aside from the trustee's certificates themselves, there was no such agreement, oral or written, made or entered into with respect to the said shares.

A trustee can properly sell trust property if such sale is necessary or appropriate to enable the trustee to carry out the purposes of the trust, unless such sale is forbidden in specific words by the terms of the trust or it appears from the terms of the trust that property was to be retained in specie in trust. (Restatement of the Law of Trusts, sec. 190 (b), p. 502, citing (among others): *Giselman v. Starr,* 106 Cal. 651 [40 Pac. 8]; *Crystal Pier Co. v. Schneider,* 40 Cal. App. 379 [180 Pac. 948].)

It does not appear from the record that any such restriction on the power of sale was contained in the stock certificates themselves. There apparently was the usual blank form for transfer printed upon the back of the certificate. In this connection, it may be noted that where a note given to a trustee was made payable to him as trustee, "or order", and a mortgage was also expressly made to him as trustee, "his assigns and successors", it has been held that the trustee has, by necessary implication, the power to sell or assign the note and mortgage. (*Giselman v. Starr, supra,* p. 656.) In that case the instruments themselves were treated as defining the powers of the trustee.

There was nothing inherent in the transaction entered into by Harry Church with the corporation which would

prevent him from including therein the trustee's shares. He received adequate consideration for all the shares so transferred. If Harry Church deemed it to his interest to withdraw from the family corporation and to take out of it his property invested therein, it would be safe to assume that he likewise deemed it to the interest of his family, appellants included. When he saw fit to withdraw his investment in the company it was only natural for him to withdraw at the same time any investment made therein for other members of his family.

Obviously, if Harry Church as trustee had the right to transfer or sell the said trustee's certificates, such a sale or transfer made in good faith would not constitute a tortious conversion.

What Harry Church may have done with the proceeds received from the above transaction after the same was consummated is not legally the concern of these respondents, it appearing that the transaction was entered into in good faith by them. Section 2244 of the Civil Code expressly provides that one who actually and in good faith transfers any money or other property to a trustee, as such, is not bound to see to the application thereof, and his rights can in no way be prejudiced by a misapplication thereof by the trustee.

It is not necessary to consider the questions raised by the affirmative defenses of respondents.

For the foregoing reasons the judgment is affirmed.

York, P. J., and White, J., concurred.