**Martha V. DESSAR, as Executrix of the Last Will and Testament of Herbert J. Dessar, Deceased, and individually, Appellant,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellee.**

**No. 19430.**

United States Court of Appeals
Ninth Circuit.

Nov. 22, 1965.

Peter Hunt, Herbert J. Friedman, Burd, Hunt & Quantz, San Francisco, Cal., for appellant.

Burnham Enersen, Wm. W. Schwarzer, David M. Heilbron, McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for appellee.

Before ORR*, KOELSCH and DUNIWAY, Circuit Judges.

---

* Circuit Judge Orr died on October 7, 1965. Judge Orr heard oral argument, and agreed with the disposition ordered by the court, but did not review the opinion.

DUNIWAY, Circuit Judge:

This is a diversity case in which appellant, plaintiff in the trial court, seeks to have it determined that a trust agreement, executed on November 8, 1933, is, as a matter of law, invalid as a trust. The theory is that the trustee (appellee) was a mere agent during the lifetime of the trustor, and that therefore provisions dealing with disposition of the trust property upon the death of the trustor are invalid because the instrument was not executed in the manner required by the California Probate Code for the execution of a will. (Cal.Probate Code, § 50) The trial court entered a judgment dismissing the action. We affirm.

Appellant, a citizen of New York, sues on her own behalf and as executrix of the will of Herbert Dessar, who was her husband. She married Dessar in July, 1951 and he died on June 20, 1959. His will was admitted to probate in New York and she was appointed executrix by the Surrogate's Court, Kings County, New York, on November 4, 1959. She is the sole legatee.

Dessar was a brother of Anna L. Winslow, the trustor, a resident of California, who died in 1947. Her will was probated in San Francisco, appellee being the executor. Under the will, Dessar was to receive one-fourth of her estate. Appellant, as his legatee, claims that he should have received one-fourth of the property that was in the trust when the trustor died, and that appellee holds this property as a constructive trustee for her.

Three motions for summary judgment were made in the court below. The first was by appellee. In the moving papers it was asserted that the trust is valid, that the action is barred by estoppel, by laches, and by the statute of limitations, and that there is a failure to join indispensable parties. In response to this motion, the court (Judge Harris) made the following order:

"This matter having been briefed and submitted for decision, and the Court finding issuable facts which call for detailed findings by the trial court,

"IT IS ORDERED that the motion for summary judgment be, and the same hereby is, DENIED."

Next, appellant moved for summary judgment. She asserted that denial of appellee's prior motion was necessarily a ruling that the trust was invalid, that this ruling was the law of the case, and that, all issues previously presented being, as she claimed, issues of law rather than of fact, she should have judgment. Nevertheless, she presented an affidavit in support of the motion. It appears to raise factual issues as to laches, estoppel, and the statute of limitations.

Appellee then also moved for summary judgment or dismissal, on the same grounds as before, and on the further grounds that appellant lacked capacity to sue. The motions were heard together and the court (Judge Burke) made the following order:

"IT IS ORDERED AND ADJUDGED that defendant's motion to dismiss be granted without prejudice upon the grounds that

1. plaintiff does not have capacity to bring this action; and

2. there is a failure to join indispensable parties."

Appellant did not amend or seek to bring in other parties, and dismissal of the action followed.

Appellee urges affirmance on numerous grounds: lack of capacity of appellee to sue, either individually or as executrix, failure to join the trust beneficiaries, the statute of limitations, laches, estoppel, and that the trust is, as a matter of law, valid. Appellant asserts that none of these grounds is supportable, and that we should reverse with directions to enter judgment for appellant because the trust is, as a matter of law, invalid. The parties agree on only one matter: that the validity of the trust is a question of law.

■ Because the District Court undoubtedly had and this court has juris-

diction,[1] because appellant urges us to decide the question,[2] because we can affirm on any ground that, as a matter of law, sustains the judgment,[3] and because it is in the interest of both parties that the question be finally decided, we consider only the validity of the trust. We affirm because we find it valid.

There is no merit in appellant's claims that the denial of appellee's first motion for summary judgment was a ruling that the trust is invalid, or that such a ruling is the law of the case. The order does not purport to decide the question. It merely denies the motion because, in the court's then view, there were "issuable facts." Such a denial merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure. The court did nothing more than it purported to do, that is, refuse to grant the motion.

But if we assume that the ruling has the effect that appellant would attribute to it, appellant is no better off. No judgment was entered. The ruling was interlocutory and not appealable. As such, it was subject to reconsideration by the court at any time.[4]

We now consider the validity of the trust instrument. Appellant does not argue that it is totally void; she tacitly concedes that, whatever its legal nature, it was a valid agreement between the trustor and appellee during the trustor's life. What she does attack is the validity of the provisions dealing with the disposition of the trust assets upon the death of the trustor. Her argument is that, during the trustor's lifetime, appellee was not really a trustee, but was merely the agent of the trustor. This means that the assets belonged to the trustor, and that the attempted post mortem disposition of them is testamentary, and is not valid because the instrument was not executed and attested as a will must be. Therefore, she says, appellee became, upon the trustor's death, a constructive trustee of the assets for the benefit of the heirs, devisees and legatees of the trustor. She claims as the successor in interest of one of them.

Appellee does not seriously dispute the general legal principles on which appellant relies. They are broadly stated in Restatement (Second), Agency § 14B (1958) and Restatement (Second), Trusts § 8 (1959). See also Note, 32 A.L.R.2d 1270 (1953); 1 Bogert, Trusts and Trustees 490 (1951); Hill v. Citizens Nat'l Trust & Sav. Bank, 1937, 9 Cal.2d 172, 69 P.2d 853. Appellee asserts that a true trust was created, to which the statute of wills does not apply, even though the trust agreement contains elaborate provisions as to the disposition of the assets upon the death of the trustor. Restatement (Second),

1. 28 U.S.C. §§ 1332, 1291. Appellant is a citizen of New York; appellee has its principal place of business in California. It is alleged that the trust assets are worth more than $700,000.

2. Appellant states in her brief: "If the agreement is valid as a trust, the questions of capacity and indispensability of parties are moot * * *. That this critical issue was properly before the District Court on motion for summary judgment and is properly before this Court is clear. Both parties stated on repeated occasions that the question of the validity or invalidity of the agreement as an inter vivos trust was a pure question of law to be decided by the Court and not the trier of fact."

3. Jaffke v. Dunham, 1957, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314; J. E.

Riley Inv. Co. v. Commissioner, 1940, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36; Commissioner of Internal Revenue v. Stimson Mill Co., 9 Cir., 1943, 137 F.2d 286, 287.

4. Castner v. First Nat'l Bank, 9 Cir. 1960, 278 F.2d 376, 380; Beedy v. Washington Water Power Co., 9 Cir., 1956, 238 F.2d 123, 127; Breeland v. Southern Pac. Co., 9 Cir., 1955, 231 F.2d 576, 579. Cf. Pearson v. Dennison, 9 Cir., 353 F.2d 24, decided November 10, 1965; Tanner Motor Livery Ltd. v. Avis, Inc., 9 Cir., 1963, 316 F.2d 804, 809, cert. denied, sub nom. Avis, Inc. v. Tanner Motor Livery, Ltd., 1963, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55; Boling v. United States, 9 Cir., 1956, 231 F.2d 926, 928.

Trusts § 57 and illustration 3; ibid Agency § 14B, comment *i*. Appellant agrees that, if a valid trust was created, the statute of wills does not apply.

The trust agreement is an eight page typewritten document, nearly all of it single spaced, signed by the trustor with her signature acknowledged before a Notary Public, and signed by appellee by two of its trust officers. The opening paragraphs read as follows:

"TRUST AGREEMENT
"THIS TRUST AGREEMENT, made and entered into this eighth day of November, 1933, between ANNA L. WINSLOW, formerly ANNA L. RUBINSTEIN, a married woman, of Oakland, California, hereinafter called the 'Trustor', and BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, hereinafter called the 'Trustee',

WITNESSETH:
"The Trustor has assigned, transferred and delivered, and by these presents does assign, transfer and deliver to the Trustee the personal property described in Schedule 'A' attached hereto and made a part hereof, and which is declared by the Trustor to be her separate property and estate. The Trustee hereby acknowledges receipt of said property which, with any additions that may hereafter be made thereto, is intended to constitute and is hereinafter referred to as the 'trust estate'.

"IT IS UNDERSTOOD AND AGREED that no consideration was given by the Trustee as such, for the transfer, assignment and delivery to it of the personal property hereinbefore mentioned and described in said Schedule 'A', and that the same has been received and accepted to be held and administered in trust for the uses, purposes and beneficiaries, with the powers and subject to the conditions following, to wit."

■■ The agreement was made and to be performed in California. Whether it created a true trust is to be determined by California law. California is a Code state; we therefore look first to the Code. Section 2221 of the Civil Code reads:

"VOLUNTARY TRUST, HOW CREATED AS TO TRUSTOR. * * * a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:
1. An intention on the part of the trustor to create a trust, and,
2. The subject, purpose, and beneficiary of the trust."

Section 2222 reads:
"HOW CREATED AS TO TRUSTEE. * * * a voluntary trust is created, as to the trustee, by any words or acts of his indicating, with reasonable certainty:
1. His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence; and,
2. The subject, purpose, and beneficiary of the trust."

Thus the question is primarily one of intent, and the language of the instrument, quoted above, seems well nigh conclusive. There is no doubt that, taken as a whole, the agreement indicates, with complete certainty, the subject, purpose and beneficiary. The intent is made manifest by the language that we have quoted.

But, says appellant, regardless of the foregoing, the trustee, during the trustor's lifetime, had no real powers or duties other than to act in accordance with the directions of the trustor. Hence, regardless of the language used, there was created a mere agency. We examine the agreement to see if this is so.

One element of a trust is trust property, conveyed to and held by the trustee as such. (Cal.Civil Code, § 2250) A large number of bonds and shares of stock, alleged to be of great value, was so conveyed. Article I permits the trustor to add to the trust property.

Article II deals with "the use, investment and control of the trust estate." Paragraph (a) authorizes, but does not require, the trustee to retain property received from the trustor. This modifies somewhat the duty regarding investments imposed by Civil Code, § 2261 (2). Paragraph (b) is heavily relied upon by appellant. It reads:

"(b) The right is reserved to the Trustor during her lifetime to direct the Trustee with reference to the sale, hypothecation, pledge, investment or other disposition of the securities and investments constituting the trust estate, and the Trustee shall make such disposition, investment or reinvestment of the trust estate or any part thereof as the Trustor shall, in writing, direct, and the Trustee is invested with all powers necessary to carry out any of the directions given it by the Trustor. Any disposition, conversion, investment or reinvestment of the trust estate or any part thereof made pursuant to the directions of the Trustor shall be at the risk of the Trustor and of the beneficiaries of this trust and without liability to the Trustee for the result thereof. During any continuance of the trust subsequent to the death of the Trustor the Trustee shall have full power to sell, assign, hypothecate, pledge or otherwise dispose of and deal with any of the securities and investments in the trust estate, and from time to time to invest, reinvest, lend and relend the funds in the trust and the proceeds of the sale, conversion or other disposition of any of the securities or investments therein in such other securities or investments whether or not approved for the investment of trust funds in the State of California as the Trustee shall deem for the best interests of the trust."

Paragraph (c) provides:

"(c) If any rights shall accrue to the trust as an incident to the ownership of any corporate stock in the trust estate, the Trustee shall notify the Trustor thereof and shall follow such written instructions as she may give with reference to the disposition of such rights, and if the Trustor shall fail, within a reasonable time, to give such written instructions, the Trustee shall have full power and authority to exercise such rights, and if necessary so to do, may obtain funds for the purpose upon the security of the pledge or hypothecation of the trust estate or any part thereof or any of the securities therein, or if, in its discretion, the Trustee shall deem it for the best interests of the trust, it may sell such rights, without liability for any fluctuation in the market price thereof, and the proceeds of such sale, unless otherwise directed by the Trustor in writing, shall be added to and shall constitute principal and not income of the trust estate."

Paragraph (d) provides that, "unless otherwise directed by the Trustor in writing," stock dividends are to be added to principal, not income. Paragraph (e) gives the trustee full power to decide what constitutes principal, gross income, and net income. It forbids amortization of premium paid and accumulation of discount obtained on securities purchased at other than par. Paragraph (f) confers authority to sue for and collect choses in action in the trust estate.

Article III requires that the trustee collect income, pay costs and expenses, and pay net income to the trustor for life, "in such manner as she shall, in writing direct."

Article IV is also heavily relied on by appellant. It reads:

"ARTICLE IV.

The right is reserved by and granted to the Trustor during her lifetime and while she shall remain competent to act, which right must be exercised by the Trustor person-

ally and may not be exercised by any guardian or legal representative, to change or amend any of the provisions of this trust or any of the trusts hereby created, or to increase or decrease the amount provided to be paid to any beneficiary, or to change the beneficiary or beneficiaries of any of the trusts, and also to revoke the trust in whole or in part and to take out of the trust and remove from the operation thereof any part or all of the trust estate; provided, however, that any change or amendment of the trust shall be by written declaration or agreement, subscribed by the Trustor and by the Trustee, and that notice of revocation, whether partial or as to the whole trust, shall be in writing, signed by the Trustor and delivered to the Trustee, and the Trustee shall be discharged of all liability for the trust estate or any part thereof removed from the operation of the trust under the power of revocation aforesaid; provided further, however, that upon the revocation of the trust in whole or in part and the removal therefrom of any part or all of the trust estate, all preferred claims and charges against the trust estate under this agreement shall first be paid and discharged."

■ Insofar as this paragraph deals with revocation of the trust, it does not confer power upon the trustor, but restricts it. Absent such a provision, the trust would be fully revocable. (Civil Code, Sec. 2280.) Nor does a reserved power to revoke render a trust invalid. (Gordon v. Barr, 1939, 13 Cal.2d 596, 91 P.2d 101).

Article V contains elaborate provisions as to what is to happen when the trustor dies. The trust "shall become irrevocable." The trustee is to pay last illness and funeral expenses, inheritance and estate taxes. A number of payments are to be made from principal to various charities and relatives of the trustor. Income is to be paid for life to various named beneficiaries. This article was revoked, and a new one substituted, by a four page written instrument dated January 20, 1942, signed and acknowledged by the trustor, approved by her attorney, and signed by appellee by two of its trust officers. It contains similar, but somewhat different provisions. One of the life income beneficiaries is appellant's now deceased husband, who received the income from the date of the trustor's death in 1947 until his own death in 1959.

Article VI provides for termination of the trust upon the death of the last survivor of seven named beneficiaries, and for distribution to the issue of two of them, or, if none, to the trustor's estate. Article VII is a carefully drawn and detailed "spendthrift" clause. Article VIII deals with the expenses and compensation of the trustee upon termination. Article IX authorizes the trustee to resign, the trustor to appoint a new trustee, and, if she does not, the trustee to obtain, at the expense of the trust, the appointment of a new trustee. (See Cal. Civil Code, §§ 2287, 2289). Article X provides that a successor corporation to appellee shall automatically become the trustee. Article XI provides, in detail, for the trustee's compensation.

■ Taken by its "four corners" the instrument looks like a conveyance in trust and was obviously intended to be one. While extensive powers are retained by the trustor, they are not so broad as to make the relationship one of mere agency. For example, the trustee is not fully relieved of its very broad duties in relation to investment under Civil Code, Sections 2261 and 2262, or under the various sections of the Code imposing fiduciary duties, such as §§ 2259–2260, 2228–2238, 2269, or of its powers under §§ 2267–2272. It must follow the trustor's written directions if given, and is protected by them. But we find nothing in the agreement relieving it of its duties when directions are not given. Cf. In re Estate of Prior, 1952, 111 Cal. App.2d 464, 244 P.2d 697; Church v. Church, 1940, 40 Cal.App.2d 696, 700, 105

P.2d 640. This observation applies to both paragraphs (b) and (c) of Article II, quoted above and paragraph (d). The powers granted by paragraphs (e) and (f) of that article and by Article III are not so restricted.

We hold that the trust was, during the life of the trustor, a true trust, not a mere agency, and that the trust is valid. The following authorities support our views: Brucks v. Home Fed. Sav. & Loan Ass'n, 1951, 36 Cal.2d 845, 228 P.2d 545; American Bible Soc. v. Mortgage Guar. Co., 1932, 217 Cal. 9, 17 P.2d 105; Booth v. Oakland Bank of Sav., 1898, 122 Cal. 19, 54 P. 370; Nichols v. Emery, 1895, 109 Cal. 323, 41 P. 1089; Hill v. Conover, 1961, 191 Cal.App.2d 171, 12 Cal.Rptr. 522; Fahrney v. Wilson, 1960, 180 Cal.App.2d 694, 4 Cal.Rptr. 670; Leemhuis v. Leemhuis, 1955, 137 Cal.App.2d 117, 289 P.2d 852; Oakland Scavenger Co. v. Gandi, 1942, 51 Cal. App.2d 69, 124 P.2d 143; Randall v. Bank of America, etc., 1941, 48 Cal.App. 2d 249, 119 P.2d 754; Reiss v. Reiss, 1941, 45 Cal.App.2d 740, 114 P.2d 718; Carr v. Carr, 1911, 15 Cal.App. 480, 115 P. 261. We do not think that Hill v. Citizens Nat'l Trust & Sav. Bank, 1937, 9 Cal.2d 172, 69 P.2d 853, on which appellant heavily relies, is to the contrary.

Affirmed.