The **TRAVELERS INDEMNITY COMPANY, a Connecticut Corporation,** Plaintiff–Appellant,

v.

**Alex MADONNA, individually and dba Madonna Construction Company and Phyllis Madonna, individually and dba Madonna Construction Company, Defendants–Appellees.**

No. 89–56306.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1990.

Decided Sept. 20, 1990.

Howard S. Fredman, Frandzel & Share, Los Angeles, Cal., for plaintiff-appellant.

Steven J. Adamski, Sinsheimer, Schiebelhut & Baggett, San Luis Obispo, Cal., for defendants-appellees.

Before POOLE, HALL and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

The Travelers Indemnity Company appeals the district court's order granting a stay of its action for unpaid insurance premiums pending the decision in a parallel state court proceeding. Travelers argues that the district court abused its discretion in holding that this case presents the exceptional circumstances required for such a stay by the doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

## FACTS

The Travelers Indemnity Company ("Travelers") is a Connecticut corporation with its principal place of business in Connecticut. Alex Madonna is a California resident who owns two businesses, Madonna Construction Company and the Madonna Inn, as sole proprietorships. In March 1985, he began negotiations with his insurance agent of some twenty-eight years, Joseph A. Wynne of the Joseph A. Wynne Agency, a California corporation. The Wynne Agency was at that time wholly owned by The Plaza Corporation. Plaza

and The Travelers Indemnity Company are both subsidiaries of The Travelers Corporation. Madonna sought to replace the current insurance for his businesses with a new policy. In June 1985, Wynne contacted him and indicated that a policy with Travelers might meet his needs at "a fair, competitive, and reasonable cost." Madonna purchased the policy, effective June 1, 1985.

Shortly thereafter Madonna began to dispute the amounts of the charged premiums and refused to pay in full. In August 1986, Travelers cancelled the 1986–87 policies for nonpayment of premiums. By January 1989, Travelers had billed unpaid premiums of $383,371.76, for fourteen months of coverage.

In June 1989, Travelers retained counsel for the purpose of filing a lawsuit against Madonna. The attorney wrote to Madonna on June 23, 1989, informing him that if he did not make satisfactory arrangements for payment by July 5, 1989, Travelers would institute legal action.

Madonna's law firm responded by letter of June 30, 1989, stating that it needed more time to review the factual background and complex documents and to obtain further information.

On July 7, 1989, Travelers' firm contacted Madonna's firm by telecopier to confirm in writing a previous oral agreement that all applicable statutes of limitations would be tolled for a period of seven days from July 7 on any claim by Travelers for nonpayment of the premiums. Because of this agreement, Travelers' firm had not filed its prepared complaint with the United States District Court in Los Angeles. The firm explained that Travelers' patience had worn thin because it had made several detailed explanations of its accounting to Madonna. If Madonna wished to ask further questions, he would have to pay immediately a substantial amount on account.

On July 10, Madonna's attorney called Travelers' attorney. Madonna's attorney requested back-up material and additional time. He agreed to an open tolling of the applicable statutes of limitations subject to ten days' notice of revocation.

On July 12, Travelers' firm sent 73 pages of explanation and supporting documentation. The cover letter explained that Travelers expected a response within a week to ten days. On July 25, the firm wrote that because it had heard nothing by way of response, it would file its previously prepared complaint against Madonna if it did not receive an acceptable response by the close of business on July 31.

On July 31, 1989, Madonna's firm corresponded by telecopier that three business days' notice prior to filing a lawsuit is unreasonable. Thus, Madonna's attorney was convinced that Travelers was determined to file a lawsuit regardless of Madonna's response. As a result, Madonna had been "forced" to file a complaint against Travelers and the Wynne Agency. The complaint had been filed on July 28, 1989, in the California Superior Court in San Luis Obispo. Brought by Mr. Madonna, dba Madonna Construction Company and dba Madonna Inn, it alleged negligent misrepresentation and breach of fiduciary duty and requested declaratory relief and damages. Named as defendants were The Travelers Insurance Company, Joseph A. Wynne Agency, and "Does 1 through 20, inclusive." The Travelers Indemnity Company was later substituted for one of the Does.

On August 1, 1989, Travelers filed its complaint in federal district court for breach of contract and common counts. The complaint named Mr. Madonna and his wife Phyllis Madonna, both individually and dba Madonna Construction Company. Jurisdiction was founded on diversity. Mr. Madonna, dba Madonna Construction Company and Madonna Inn, filed a counterclaim on August 23, 1989, alleging breach of an agreement to procure insurance at "a fair, competitive, and reasonable cost," negligent misrepresentation, and breach of fiduciary duty.

Upon Madonna's [1] motion, the district court, on October 26, 1989, without a hear-

---

1. Although Mrs. Madonna is a defendant in the federal action, she is never specifically men-

ing, granted a stay pursuant to the doctrine of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The court rested its decision solely on the "interest in avoiding piecemeal litigation," one of a number of factors a court may consider under *Colorado River.* The court also discussed another factor, forum shopping, but concluded that "[e]ven if this consideration were paramount, it remains unresolved, and would not compel the court to refuse a stay."

■ Travelers timely appealed. A *Colorado River* stay order is appealable as a final order. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.* ["*Cone*"], 460 U.S. 1, 13, 103 S.Ct. 927, 935, 74 L.Ed.2d 765 (1983); *Nakash v. Marciano,* 882 F.2d 1411, 1413 (9th Cir.1989).

## STANDARD OF REVIEW

■ The standard of review in *Colorado River* abstention cases is abuse of discretion. *American Int'l Underwriters, Inc. v. Continental Ins. Co.,* 843 F.2d 1253, 1256 (9th Cir.1988). "However, the abuse of discretion standard in this case should not be confused with the broader abuse of discretion test used in other matters, such as rulings on certain evidentiary issues." *Id.* "In abstention cases, 'discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved.'" *Id.* (quoting *C–Y Dev. Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983)). Thus, the district court's discretion here must have been exercised within the "exceptional circumstances" limits of the *Colorado River* doctrine. *Id.*

## DISCUSSION

### I. The Balancing Test

■ *Colorado River* deference to state court proceedings rests on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources

tioned in the briefs or by the district court. We will henceforth follow the parties' lead in refer-

and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'" *Id.* (quoting *McClellan v. Carland,* 217 U.S. 268, 281–82, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910)). The "circumstances permitting" deference, "though exceptional, do nevertheless exist." *Id.* 424 U.S. at 818, 96 S.Ct. at 1246.

The Supreme Court has listed a number of factors for the federal court to consider in assessing whether *Colorado River* deference is appropriate:

[i]t has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... [A] federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

*Colorado River,* 424 U.S. at 818–19, 96 S.Ct. at 1246–47 (citations omitted). Two additional factors were added in *Cone:* whether "federal law provides the rule of decision on the merits" and whether the state court proceedings are inadequate to protect the federal litigant's rights. 460 U.S. at 23, 26, 103 S.Ct. at 941, 942. Also, this Circuit has held that, because "the

ring simply to "Madonna."

prevention of forum shopping would promote wise judicial administration," forum shopping is another appropriate factor to consider. *American Int'l Underwriters,* 843 F.2d at 1259. Because of the flexible approach called for by the Supreme Court, this list of factors is not exclusive, and others may be considered. *Nakash,* 882 F.2d at 1416.

The factors relevant to a given case are to be subjected to a balancing test:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

*Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

## II. Evaluation of the Factors

### A. *Jurisdiction Over the Res*

■ The district court found that consideration of this factor was "unhelpful." The parties apparently agree that this factor is irrelevant to the *Colorado River* determination. Their assessment is correct: "money ... is not the sort of tangible physical property referred to in *Colorado River.*" *American Int'l Underwriters,* 843 F.2d at 1258.

### B. *Inconvenience of the Federal Forum*

■ This was another of the factors the district court deemed "unhelpful." Madonna now argues that this factor supports the district court's grant of a stay. As an appellee, he may "assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court." *Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491 (1970); *see also United States v. Honigman,* 633 F.2d 1336, 1338 (9th Cir.1980). This court "can affirm on any ground that, as a matter of law, sustains

the judgment...." *Dessar v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 353 F.2d 468, 470 (9th Cir.1965).

Madonna argues that the federal forum is inconvenient because the federal court is in Los Angeles while he, his businesses, and his "books, records and documents" are located in San Luis Obispo, where the state court proceedings are being conducted. He compares the approximately 200–mile–distance between San Luis Obispo and Los Angeles to the 300–mile–distance between the state and federal courts that was held "significant" in *Colorado River,* 424 U.S. at 820, 96 S.Ct. at 1247. He further points out that no party is a resident of Los Angeles County.

Travelers responds that because Madonna and his businesses are located within the Central District of California, the United States Courthouse in Los Angeles is "presumptively 'convenient.'" Travelers maintains that any inconvenience for Madonna is counterbalanced by inconvenience to it because there are direct airline connections from the East Coast to Los Angeles but not to San Luis Obispo. Travelers points to the Fifth Circuit's holding that "[t]he question in the end is not whether" the party opposing the stay can demonstrate that the federal forum "is a 'better' or 'more convenient' forum. Rather, it is whether the inconvenience of the federal forum is so great that this factor points toward abstention." *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1192 (5th Cir. 1988).

Although 200 miles is a fair distance, it is not sufficiently great that this factor points toward abstention. The district court did not err in finding this factor "unhelpful."

### C. *The Desirability of Avoiding Piecemeal Litigation*

■ "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction....'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *McClellan,* 217 U.S. at 282, 30 S.Ct. at 504). However,

piecemeal litigation is a factor that can support a stay under the exceptional circumstances test. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters,* 843 F.2d at 1258.

The district court appears to have granted the stay solely on the basis of this factor, finding it "determinative." The court stated that "piecemeal adjudication would necessarily result from the Court's refusal to stay the present action." Its reasoning was that Wynne could not be joined in the federal action because his presence would defeat diversity and because the Ninth Circuit forbids pendent party jurisdiction.

The district court is correct that this Circuit will not permit pendent party jurisdiction. *See Danner v. Himmelfarb,* 858 F.2d 515, 522 (9th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2067, 104 L.Ed.2d 632 (1989); *Safeco Ins. Co. of Am. v. Guyton,* 692 F.2d 551, 555 (9th Cir.1982). Thus, Wynne could not be brought into the federal action.

The court also stated that "[t]he dilemma presented by the Court's refusal to entertain pendent party jurisdiction would be alleviated if it could be shown that Joseph Wynne were not a necessary party to the two suits." Since this determination rests on the factual question of whether Wynne was acting solely as Madonna's agent, the court found it "appropriate that Wynne be joined in the litigation for a binding determination of the issue of agency and the liability which might result."

The court's reasoning here weights improperly the *Colorado River* balance. Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one. "Only the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247.

A correct evaluation of this factor involves considering whether exceptional circumstances exist which justify special concern about piecemeal litigation. Travelers argues that there are no such circum-

stances here. It points out that no federal legislation evincing a federal policy to avoid piecemeal litigation is applicable. This case involves ordinary contract and tort issues and is thus unlike *Colorado River* where important real property rights were at stake and where there was a substantial danger of inconsistent judgments. Here there is no "vastly more comprehensive" state action that can adjudicate the rights of many parties or the disposition of much property.

Travelers' position has merit. Since at the time of the district court's stay order the state court had made no rulings whatsoever in regard to this dispute, there is no certainty that duplicative effort would result. *Cf. American Int'l Underwriters,* 843 F.2d at 1258 (the state court having already decided several substantive issues in the case, it was clear that the federal court would have to decide those issues anew if it exercised jurisdiction). In addition, whichever court were to first reach a judgment on the merits, that judgment would most likely have conclusive effect on the other court. *See Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534, 542 (9th Cir.1985).

Madonna counters with the argument that because Wynne cannot be made a party to the federal action, "there is no assurance that Madonna's rights will be fully protected." State court, in contrast, "will fully protect the rights of all parties."

The issue here, however, is not simply whether state court is a "better" forum. As Travelers argues, it is quite possible that Madonna's rights *will* be fully protected in federal court. The district court can resolve Travelers' breach of contract claim, Madonna's tort claims, the issue of whether Wynne was acting as Madonna's agent, and the merits of the claim against Wynne if he is found to have acted as Travelers' agent. The theoretical possibility that Wynne might have acted tortiously while not acting as Travelers' agent does not provide the exceptional circumstances necessary for a stay.

### D. *The Order in which Jurisdiction Was Obtained*

■ The district court also considered this factor "unhelpful." Both parties agree that it is neutral here because the two actions were filed almost simultaneously—the state court action was filed only three days prior to the federal action. At the time of the district court's grant of the stay, there had been no substantial progress in either action. Travelers states (and Madonna does not seem to disagree) that an amended complaint in state court had not yet been filed.

"[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Cone,* 460 U.S. at 21, 103 S.Ct. at 939. " 'The mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden on the defendant' which would justify abstention." *Herrington v. County of Sonoma,* 706 F.2d 938, 940 (9th Cir.1983) (quoting J. Moore, *Moore's Federal Practice,* vol. 1A, pt. 2, ¶ 203[4], p. 2141 (2d ed. 1948, 1982 update)). The district court did not abuse its discretion in finding this factor "unhelpful."

### E. *The Rule of Decision*

■ This was another "unhelpful" factor. Madonna argues that "the presence of state law issues supports abstention" where there are also other factors favoring abstention. Its argument does not correctly state the law: although "the presence of federal-law issues must always be a major consideration weighing against surrender," the "presence of state-law issues may weigh in favor of that surrender" only "in some rare circumstances." *Cone,* 460 U.S. at 26, 103 S.Ct. at 942. Since this case involves routine issues of state law— misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding, there are no such "rare circumstances" here.

### F. *Inadequacy of the State Court Proceedings to Protect the Federal Litigant's Rights*

■ The district court also found this factor "unhelpful." Madonna argues that while "the state court is an adequate forum for the resolution of all the issues raised by the parties," "[t]he federal forum, on the other hand, is an inadequate forum; due to its limited jurisdiction, it is incapable of providing the parties with an economical and comprehensive resolution of this matter."

In stating that the federal forum is inadequate, Madonna does not correctly apply this factor. This factor involves the *state* court's adequacy to protect *federal* rights, not the federal court's adequacy to protect state rights. *See Cone,* 460 U.S. at 26, 103 S.Ct. at 942. In addition, it appears that this Circuit has not applied this factor against the exercise of federal jurisdiction, only in favor of it. The Second Circuit, however, has stated that "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 328 (2d Cir.1986). Thus, this factor is of little or no weight here; "unhelpful" is an apt characterization.

### G. *Forum Shopping*

■ Travelers alleges that Madonna's attorney requested more documentation and pretended to be interested in settlement in order to delay Travelers' threatened filing of a federal action so that Madonna could file his own action in state court first. Madonna responds that Travelers' attorney "unilaterally terminated negotiations," and that he had no choice but to file an action in state court, the only forum in which he could also sue Wynne. His attorney states that he never promised Madonna would not sue.

The district court addressed this factor as follows:

Travelers' allegation that Madonna engaged in a strategem in order to file the state proceeding first does not sit well with the Court. Nonetheless, the Court is not persuaded that this factor alone is dispositive of the question whether a stay is appropriate. *See, e.g., Federal Deposit Insurance Corporation v. Nichols*, [885 F.2d 633, 638 (9th Cir.1989)] (forum shopping alone inadequate grounds to invoke *Colorado River* stay). Moreover, these allegations are vehemently contested by Madonna.... Even if this consideration were paramount, it remains unresolved, and would not compel the Court to refuse a stay.

The district court thus chose not to make any factual findings as to what occurred. As in its discussion of the danger of piecemeal litigation, the court's language here, especially the last sentence, suggests that it had an incorrect view of how the *Colorado River* balance is to be weighted. As the Supreme Court has held,

> we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Cone*, 460 U.S. at 25–26, 103 S.Ct. at 942.

In addition, although *Nichols* did hold that federal courts may not decline to exercise jurisdiction solely on the basis of forum shopping, that case did not decide whether this factor alone can require the exercise of jurisdiction. Since the balance is already weighted in favor of the exercise of jurisdiction, it is quite possible that forum shopping might in some instances mandate denial of a stay. In sum, the district court abused its discretion in its analysis of this factor.

In the *Colorado River* context, this Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules. *See Nakash*, 882 F.2d at 1417 (avoidance of adverse rulings); *American Int'l Underwriters*, 843 F.2d at 1259 (application of Federal Rules of Evidence). Travelers does not allege that Madonna had either of these purposes in mind. Thus, it is unclear that, even assuming Travelers' allegations to be true, Madonna engaged in any sort of forum shopping that is improper in the *Colorado River* context.

*Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534 (9th Cir.1985), involved a similar situation. After three years of unsuccessful negotiations over the interpretation of a contract, Long Beach, the party which sought more money under the contract, informed Mobil and other oil companies involved that it appeared litigation to resolve their dispute would be inevitable. *Id.* at 537. Soon after, Mobil sought injunctive and declaratory relief in federal court. *Id.* at 538. A week later Long Beach filed suit in state court. *Id.* The district court dismissed the federal action on *Colorado River* grounds. *Id.* at 540. The district court found, inter alia, that Mobil had improperly engaged in a race to the courthouse, and that Mobil's preference for a federal forum was somehow "invidious." *Id.* at 542–43. This Circuit reversed, stating that "[w]e see nothing invidious about a plaintiff filing suit in federal court before his opponent files a similar suit in state court.... Long Beach is no more entitled to its choice of forum in this contract action than Mobil...." *Id.*

Although this case involves Madonna's preference for a *state* forum, this reasoning could be applied to the Travelers–Madonna race to the courthouse. Even if Travelers' assertions are taken as true, it may be that Madonna merely acted within his rights in filing a suit in the forum of his choice.

Given the lack of factual findings by the district court and the uncertainty as to whether Madonna's alleged misconduct amounts to improper forum shopping, it is unclear whether this factor weighs against a *Colorado River* stay.

### H. *Substantial Similarity*

 The district court also considered the question of whether the state and federal actions are "substantially similar." This factor was recognized in *Nakash*, where the court stated that "exact parallelism ... is not required. It is enough if the two proceedings are 'substantially similar.'" 882 F.2d at 1416. The district court's finding of similarity, a finding which is not disputed by either party, is not an abuse of discretion.

### III. The Balance

 To determine whether a stay is warranted, the relevant factors must be balanced, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Cone*, 460 U.S. at 16, 103 S.Ct. at 937. Here, the forum-shopping factor may weigh against a stay. The only factors that weigh in favor of a stay are the minor inconvenience of the federal forum and the possibility that the federal proceeding might not resolve a claim against one party to the state suit. These factors do not create the "exceptional circumstances" required for *Colorado River* deference because they are present to this degree in many instances of parallel federal-state litigation. Therefore, we hold that the district court abused its discretion in refusing to exercise jurisdiction.

REVERSED.