**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1883
_____

PROVIDENCE PEDIATRIC MEDICAL DAYCARE INC;
G.V., on behalf of her minor child,
M.N.; T. P., on behalf of her minor child J.M.; A. B., on behalf of her
minor child T.B.; D. L., on behalf of her minor child J.B.; H. S.,
on behalf of her minor child C.T.

v.

POONAM ALAIGH, Individually and as Commissioner of the New
Jersey Department of Health and Senior Services;
NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES;
JENNIFER VELEZ, Esq., Individually and as Commissioner of the
Department of Human Services; NEW JERSEY DEPARTMENT OF HUMAN
SERVICES;
JOHN GUHL, Individually and as Director of the Division of Medical
Assistance and Health Services; DIVISION OF MEDICAL ASSISTANCE AND
HEALTH SERVICES

Providence Pediatric Medical Day Care Inc,
Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-10-cv-02799)
District Judge:  Hon. Noel L. Hillman
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 17, 2016
_____

Before:  AMBRO, SHWARTZ, and FUENTES, Circuit Judges.

(Filed:  December 6, 2016)

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

Providence Pediatric Medical DayCare, Inc., appeals the District Court's order granting summary judgment in favor of Poonam Alaigh and others ("Defendants") and denying Providence's cross-motion for attorneys' fees and costs. For the reasons set forth herein, we will affirm.

I

Providence, a New Jersey corporation, operates several pediatric medical daycare ("PMDC") facilities. PMDC facilities "provide[ ] medically necessary services to technology-dependent children or children with complex medical needs in an ambulatory care setting." App. 165, 549. An entity wishing to open, expand, or relocate a PMDC facility in New Jersey must obtain a license from the New Jersey Department of Health ("DOH"). The licensing process requires such an entity to submit a project proposal, application, and fee to DOH.

On September 22, 2003, Providence submitted an application to DOH to expand the capacity of its Camden, New Jersey facility from 30 to 114 children, or "slots," per day. To do so, Providence sought to use both the first and second floors of the building

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

in which it had been operating. DOH returned the application because state regulations allowed a maximum of only 27 slots per facility.

On November 3, 2003, DOH imposed a moratorium on applications for new or expanded PMDC facilities. Providence submitted two applications after the moratorium began: it re-submitted its earlier application to expand its Camden facility, and it submitted an application to obtain a license for a new facility in Berlin, New Jersey.[1] DOH rejected both applications because they were submitted after the moratorium came into effect. During the moratorium, however, Providence was permitted to transfer the license for its existing facility in Lawnside, New Jersey to the first floor of its Camden building. Providence thus obtained a license for its expanded Camden facility on September 6, 2005.

The moratorium was lifted on November 1, 2012, and Providence thereafter applied for a license for its Berlin location, which DOH granted on December 5, 2014.

Providence filed a Complaint on June 1, 2010, asserting, among other claims, that it was denied equal protection on the grounds that Defendants selectively and arbitrarily enforced the 27-slot limitation and the moratorium.[2] Providence sought damages as well as injunctive and declaratory relief.

---

[1] Providence notes that it submitted its initial application for the expanded Camden facility and at least began the application process for the Berlin facility prior to the moratorium. The cover letters for its Berlin and (re-submitted) Camden applications were dated November 2, 2003, but the overnight mail envelope was dated November 13, 2003, and the check accompanying the applications was dated November 14, 2003.

[2] Providence also asserted that Defendants: (1) failed to comply with federal Medicaid laws, (2) denied it and children in its care equal treatment and comparable care as required by Title XIX, (3) failed to administer the Medicaid program efficiently and

3

Following discovery, Defendants moved for summary judgment, which the District Court granted on all but Providence's equal protection claim for prospective injunctive and declaratory relief against the individual defendants in their official capacities.

Defendants filed a second motion for summary judgment on the equal protection claim, and Providence cross-moved for, among other things, attorneys' fees and costs.[3] The District Court granted summary judgment on the equal protection claim on the ground that it was moot because Providence had already obtained the two licenses it sought and it made no allegations about its ability to obtain licenses in the future or show that another moratorium would be imposed. The District Court denied Providence's cross-motion for fees, finding it was not a "prevailing party" under 42 U.S.C. § 1988(b) because the issuance of the licenses was not the result of judicial action. Providence appeals.

II[4]

effectively, and (4) violated due process based on the allegedly selective and arbitrary enforcement of the 27-slot limit and the moratorium, as well as the promulgation of new clinical eligibility standards.

[3] Providence also cross-moved to reopen discovery, which was denied. This ruling was not appealed.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant or denial of summary judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). We apply the same standard as the District Court, viewing facts and making all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-

4

A

We first consider whether the District Court properly granted summary judgment on Providence's request for injunctive relief on its equal protection claim because it is moot.

Under Article III, a federal court may "exercise . . . judicial power" only over cases or controversies. Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007) (quoting Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 914 (3d Cir. 1987)). The existence of a case or controversy requires "'(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.'" Id. (quoting Int'l Bhd. of Boilermakers, 815 F.2d at 915). Put simply, a case or controversy arises when one party asserts that another party has violated its rights.

"A case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violations." N.J. Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985) (quoting Finberg v. Sullivan, 658 F.2d 93, 97-98 (3d Cir. 1980)); see also Friends of the Earth, Inc. v. Laidlaw Envtl.

_____

moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) ("'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968))).[5]

Providence contends that Defendants violated its equal protection rights in connection with licenses it sought to operate facilities in Camden and Berlin. Events after Providence's 2003 applications, however, eradicated any effects of Defendants' alleged equal protection violation. In 2005, Providence was permitted to expand its Camden facility by transferring a license from another facility. In 2014, Providence applied for and was granted a license to open a facility in Berlin. In short, Providence has already "received the very relief [it] sought" and the effects of Defendants' actions have been eradicated. Gayle v. Warden Monmouth Cty. Corr. Inst., --- F.3d ---, 2016 WL 5219877, at *5 (3d Cir. Sept. 22, 2016) (dismissing for mootness and noting that the appellants' individual claims had been moot for nearly three years). Furthermore, there is no reasonable expectation of recurrence. The moratorium has been lifted, no moratoria have since been implemented on PMDC facilities, and there is no evidence that any will be imposed in the future. See Hudson v. Robinson, 678 F.2d 462, 465 (3d Cir. 1982) ("If a defendant has discontinued challenged activities (as this defendant has), the case is moot if there is no reasonable expectation that the wrong will be repeated."). Thus, the

---

[5] A defendant's "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." Concentrated Phosphate Export Ass'n, 393 U.S. at 203 (citing United States v. W. T. Grant Co., 345 U.S. 629, 632 (1953)).

6

District Court properly found that Providence's request for injunctive relief based on its equal protection claim is moot.

B

The District Court properly denied Providence's cross-motion for attorneys' fees and costs because Providence is not a "prevailing party" under § 1988.[6] To be a prevailing party under § 1988, the plaintiff must "'at a minimum, . . . be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.'" Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 228 (3d Cir. 2011) (en banc) (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)). That change "must be the product of judicial action." Id. As the Supreme Court has explained, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001) (rejecting the "catalyst theory" as a basis for fees and costs) (emphasis omitted); see also Singer Mgmt. Consultants, 650 F.3d at 228 ("[A] plaintiff does not become a 'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's conduct.") (citation and internal quotation marks omitted).

Here, Providence is not a "prevailing party" because the changes in the parties' legal relationship are not the result of any "judicial action." The moratorium expired and

---

[6] We exercise plenary review over the question of whether a plaintiff is a "prevailing party." Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 163 (3d Cir. 2002).

7

Providence obtained the licenses it had sought since 2003, but not through judicial action. See Singer Mgmt. Consultants, 650 F.3d at 229-32 (holding that plaintiff was not a prevailing party under § 1988 where the district court had entered a TRO and defendant then voluntarily changed its position, thereby "moot[ing] the case at the preliminary injunction hearing"). Because the change in the legal relationship among the parties was not the product of any judicial action, the District Court correctly denied Providence's request for fees and costs.[7]

## III

For the foregoing reasons, we will affirm.

---

[7] To the extent Providence asserts it is a "prevailing party" because its equal protection claim survived the first motion for summary judgment, this argument fails. A denial of summary judgment is not a ruling on the merits and does not operate to change the parties' legal relationship. See Dessar v. Bank of Am. Nat'l Tr. & Sav. Ass'n, 353 F.2d 468, 470 (9th Cir. 1965) ("[A] denial [of a motion for summary judgment] merely postpones decision of any question; it decides none. To give it any other effect would be entirely contrary to the purpose of the summary judgment procedure.").